John W. Goldsworthy and Peter Lenahan, Poor Directors of the Poor District of Conyngham Township and Borough of Centralia, Appellants, *v.* B. J. Boyle, Poor Director, Frank Brennan, Steward, and C. G. Murphy.

*Election law—Certificate of election—Contest—Evidence.*

Where there has been an authorized election for a public office the certificate of election which is sanctioned by law or usage is the prima facie written title to the office, and can be set aside only by a contest in the forms prescribed by law.

After the judges of election have issued a certificate of election to one person, they have no power to issue another certificate to another person for the same office.

*Public offices—Equity—Injunction quo warranto.*

A bill in equity will not lie to restrain a person from acting in a public office. The remedy is at law by quo warranto.

At an election for poor directors, the judges of election issued a certificate to C. and subsequently a certificate to L. for the same office. The board of poor directors consisted of three persons, two of whom, G. and D., held over. G. recognized L. as elected, and D. recognized C. as elected. G. and L. filed a bill in equity against D., and the steward and tax collector whom D. and C. had appointed. *Held*, (1) that the organization of the board by G. and D. was not a regular and legal organization of the board; (2) that a court of equity had no jurisdiction to restrain D. and C., who were acting as a de facto board, and had not undertaken to dispose of any of the property of the school district wrongfully, or to do any other act inconsistent with their duties as poor directors; (3) that equity had no jurisdiction to determine whether L. or C. had been properly elected.

Argued April 15, 1896. Appeal, No. 303, Jan. T., 1896, by plaintiffs, from order of C. P. Columbia Co., Sept. T., 1895, No. 4, dismissing bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ. Affirmed.

Bill in equity for an injunction.

The facts appear by the opinion of the court by METZGER, P. J., of the 29th judicial district, specially presiding, which was as follows:

The bill in this case substantially alleges: 1st. That by virtue of the act of 27th of April, 1869, P. L. 1228, an election was held on the 19th of February, 1895, to elect one person director of the poor in pursuance of the authority of said act. 2d. That the township of Conyngham for election purposes is divided into five election districts: west north Conyngham, southwest Conyngham, east north Conyngham, southeast Conyngham, and west Conyngham, and that elections were held on the day aforesaid for poor director in each of said districts. 3d. That the poor directors for the said poor district for the year commencing the second Monday in April, 1892, were George Shaum, elected for three years, whose term of office expired on the second Monday of April, 1895, and to whose place a successor was to be elected; and John W. Goldsworthy who was elected in 1893 for three years; and B. J. Doyle for three years in 1894. 4th. That the board of directors for the year 1894–1895 was Goldsworthy, president; Doyle, secretary; Martin Mohan, clerk; Andrew J. Lenahan, collector and treasurer; Frank Brennan, steward; and Mrs. Frank Brennan, matron. 5th. That on February 19, 1895, Peter Lenahan was elected poor director for said district (here the bill states the number of votes cast for him in each district, making the total cast for him of two hundred and ninety-six votes, and that Patrick J. Cain had a total of two hundred and seventy-one votes). 6th. That the triplicate return sheet filed shows the state of facts above set forth, and the prothonotary entered at large that Peter Lenahan was duly elected; that the triplicate return sheet for west Conynghan had written therein forty-seven votes for Peter Lenahan and thirty-eight votes for Patrick J. Cain; that the figures opposite the name of Lenahan are in different colored ink in a defaced, erased space set out for figures, and do not correspond with the written numbers, but the figures 31 are therein placed; and the figures opposite the name of Patrick J. Cain are in a different colored ink in a defaced, erased space, set out for figures, and do not correspond with the written numbers, but the figures 49 are therein placed. 7th. That at a meeting of the return judges, three of the five, on February 25, 1895, namely Patrick Gillespie, Patrick Flynn and William Goodman signed a certificate of election, as appears further on in the bill, for Patrick J. Cain, and that this certificate was signed by William Goodman through duress and

through fear of bodily harm. 8th. Thirty-seven citizens on March 9, 1895, instituted a contest, contesting the election of Patrick J. Cain. 9th. That on the 6th day of April, 1895, Peter Lenahan received a certificate from the majority of said judges, certifying that the returns had been tampered with in Midvalley and that from the writings on the tally list of votes of the election held February 19, 1895, Peter Lenahan had for the office of director of the poor aforesaid a majority of the votes and was duly elected. One of the three judges signing this certificate was William Goodman, who certifies also that he signed Cain's certificate erroneously, and therefore joins in the certificate to Lenahan. 10th. That the prima facie evidence of the election of Lenahan is the election returns and evidence in the office of the clerk of the court of quarter sessions. 11th. That on the second Monday of April, 1895, the old board consisting of Goldsworthy, Doyle and Shaum, met, and Peter Lenahan appeared with his certificate, having filed his oath of office March 30, 1895, and the president decided that Lenahan's certificate should be read. Doyle refused and recognized Cain and withdrew from the meeting, leaving the books, papers and seal with Goldsworthy. 12th. That Goldsworthy and Lenahan organized a new board for 1895 and elected Mohan, clerk, Goldsworthy, chairman, and Brennan and wife, steward and stewardess, and A. J. Lenahan, treasurer and tax collector. That said organization is in possession of the books, papers and seal of the corporation. 13th. That complainants are advised that Doyle and Cain have made an attempt to organize a board and appoint C. G. Murphy, treasurer and collector, and have placed a duplicate in his hands and that Frank Brennan, the steward, is in possession of property and is acting under instructions from said Doyle and Cain. 14th. That a commissioner was appointed to take testimony in an election contest instituted in behalf of Peter Lenahan, and that Martin Axman appeared and testified that Lenahan had received forty-seven votes in west Conyngham, and Cain thirty-eight, and that he wrote in the numbers opposite the said names in the triplicate return sheet. 14½. That forty men appeared before the commissioner and testified that they had voted for Lenahan. 15th. That the conduct of Frank Brennan in ignoring the regularly organized board and in making requisition for the poor district without proper authority will do harm to the

district and those giving it credit. 16th. That C. G. Murphy is attempting to collect taxes for the said poor district, and by so doing is hampering the officers of the said poor district. 17th. That Bernard J. Doyle and Patrick J. Cain are disposing of and trading horses and cows, and issuing orders on account of debts contracted by them to the damage and injury of the taxpayers. 18th. That the conduct of the said Bernard J. Doyle in selling and disposing and trading of property of the poor district, issuing orders, etc., and of the said C. G. Murphy in attempting to collect taxes for said poor district are doing great harm and irreparable injury to the poor district, for which there is no adequate remedy at law.

Thereupon praying for equitable relief as follows : That the said B. J. Doyle be restrained, etc., from recognizing and countenancing the said Cain as director of the poor for Conyngham township and the borough of Centralia poor district, and from selling or attempting to sell any of the property of the said poor district, issuing any orders, etc., as against the said poor district, by and with the assistance of the said Patrick J. Cain. 2d. That the said C. G. Murphy be restrained etc., from attempting to collect any taxes or moneys due, owing or to become due the said poor district. 3d. That Frank Brennan, the steward, his agents and employees be restrained, etc., from recognizing Bernard J. Doyle and Patrick J. Cain as the constituted authority of the poor district of Conyngham township and the borough of Centralia. And, lastly, for such other and further relief as to equity may belong and this court may deem meet.

Considerable testimony has been taken in this case in support of the complainants' bill, principally all of which was received under objections of counsel for respondents. As we now view this case we think the greater part of the testimony, in fact, all the testimony which tended to show who was elected poor director, is irrelevant except so far as the certificates of election are concerned. We feel satisfied that in this proceeding we cannot determine which of these officers was duly elected. The complainants' bill admits that a certificate of election signed by a majority of the judges of election was duly issued to Patrick J. Cain. The certificate seems to be regular upon its face, and issued at the proper time in pursuance of the act of assembly requiring election boards to issue such certificates. We think

this certificate was competent evidence, but we think that no evidence in this proceeding could be admitted to invalidate this certificate. The evidence also of the certificate subsequently issued to Lenahan was properly received. We also think that the evidence of what took place at the meeting of the board at the house of Goldsworthy on the second Monday of April, 1895, when there was an attempt to organize, is proper evidence. Therefore, the evidence as to what occurred there will be considered.

From the bill and evidence in this case we find, therefore, that Patrick J. Cain received a certificate of election as provided by the act of assembly, and that Peter Lenahan's certificate was not issued and received by him until about six weeks after the certificate had been issued and served on said Cain, and not until after William Goodman had ceased to be a judge of election. We also find that both Cain and Lenahan were present at the meeting on the second Monday of April, 1895, and presented their certificates of election to the members of the old board; that there were but two members of the old board in office, namely: John W. Goldsworthy and B. J. Doyle, the former being the president of the old board and the latter the secretary; that Goldsworthy refused to recognize the certificate of election of Patrick J. Cain, and Doyle refused to recognize the certificate of election of Peter Lenahan; that thereupon Goldsworthy and Peter Lenahan organized a board, and B. J. Doyle and Patrick J. Cain also organized a board of directors; that the board organized by Goldsworthy elected Goldsworthy, chairman; Martin Mohan, clerk, and Frank Brennan and his wife, steward and stewardess; and A. J. Lenahan, treasurer and tax collector for the ensuing year. That the board organized by Bernard J. Doyle elected C. G. Murphy, treasurer and tax collector; William Garvin, clerk; and Frank Brennan and his wife, steward and stewardess. The books, papers and the seal of the poor district were left in the possession of John W. Goldsworthy and Peter Lenahan, while the property of the district seems to be in the possession of the board organized by Doyle and Cain, who have made a disposition of some of the property; but, from the evidence, it does not seem that this was done to the detriment of the poor district. The treasurer and tax collector has also collected a small amount of taxes, and

has attempted to collect more, but on account of the taxpayers being notified by the collector of the other board not to pay, he has been unable to make any further collections.

The first question that it seems to us should be disposed of, is whether the court has jurisdiction to grant the relief prayed for under the facts as stated in the bill and the evidence to which we have referred. It is contended on the part of complainants that this proceeding can be sustained under the rulings in the cases of Ewing v. Thompson, 43 Pa. 372, and Kerr v. Trego, 47 Pa. 292. We have carefully examined these authorities, and we cannot agree with the position taken by complainants' counsel that they sustain the position taken by complainants in this case. In neither of these cases has the court undertaken to determine who was legally elected, nor was it claimed that in these proceedings the certificate of election could be invalidated or ignored. Quite the contrary was determined. In the case of Ewing v. Thompson, the court held that when the executive had commissioned a person elected according to the forms of law, his duty was performed, and a right was vested in the person commissioned which nothing but a judicial decision could take away or authorize the executive to recall. This case is cited in the 6th Am. & Eng. Ency. of Law, p. 376, for the purpose of establishing that when a certificate of election has been issued the power of the board is to be considered at an end, and that a certificate would be irrevocable except by regular contest, and that a subsequent election or commission would have no validity. Applying this principle to the facts in this case, it follows that the judges of elec-. tion had no power to issue a certificate to Peter J. Lenahan after having previously issued a certificate of election to Patrick J. Cain.

In the case of Kerr v. Trego, supra, on page 296, Chief Justice LOWRIE, in delivering the opinion of the court, says: " In all cases of this kind, at least in all bodies that are under law, the law is that where there has been an authorized election for the office in controversy, the certificate of election which is sanctioned by law or usage is the prima facie written title to the office and can be set aside only by a contest in the forms prescribed by law. This is not now disputed. No doubt this gives great power to dishonest election officers. We know no

remedy for this but by the choice of honest men. When party fealty is a higher qualification than honesty or competency we must expect fraud and force to rule and a man must be an Ajax or Ulysses to be qualified for office." It is true the court held in that case that the members of the council of Philadelphia, known as the Kerr body, had legitimately organized, and that the other body, known as the Trego body, had no regular organization, and it was held that an injunction would lie at the instance of the regularly organized body to restrain the one not so organized. The facts there were wholly different from the facts in controversy in this case. There was no dispute that the Kerr body had a large majority of the old members whose term had not yet expired, and the clerk and assistant clerk were still in office, and that they had a quorum, and that all the proceedings of organization were regular. Certainly it would not be contended for a moment that a minority could prevent the organization of the majority, or that the minority body could usurp the powers of the majority, and that the majority would be helpless and unable to invoke the aid of a court of equity to restrain a minority under such circumstances. Now it was there alleged on the part of the defense that the Kerr body was about to receive members who had not been elected, and that therefore they intended to use their power fraudulently, but the court held that they knew of no cure for this, and therefore refused in that proceeding to consider that matter.

In the case at bar we cannot see how it can be pretended that there was any regular organization of the Goldsworthy board, unless a body consisting of three members can be organized by one in opposition to the other members of the board. Here were two members only of the old board in existence. Two parties present certificates of election to the position of third member of the board, the one issued in due form at the proper time, and the other indisputably issued sometime thereafter, and therefore without authority; one member of the board recognizes the one with the later certificate and with him effects an organization, notwithstanding the objection of his colleague and the party presenting the regular certificate of election. It is absurd to call this a regular and legal organization of the poor directors of the district. We do not say that the other organization is legal and regular, but whether it is so or not, it is act-

ing as the de facto board, and its action cannot be restrained at the instance of another body whose organization is equally defective. It is necessary in a case of this kind that somebody should take charge of the poor while the contest is pending, and this is another reason why the respondents should not be restrained unless they are doing something that is manifestly wrong and prejudicial to the interests of the public or of the poor district.

We cannot help feeling that this proceeding, if sustained, would accomplish by a short cut what the contest that has already been inaugurated, contesting the election of Patrick J. Cain, is intended to effectuate. The fact that Patrick J. Cain is not made a party in this proceeding seems to imply that the complainants themselves felt that his title to the office would first have to be determined by proceedings at law before a court of equity would have jurisdiction in the premises. If he cannot be restrained, then why should Doyle be restrained from recognizing him as a poor director?

The only reason that can be given is the allegation that though Cain's title to office cannot be controverted in this proceeding, yet under the bill and the evidence in the case he was manifestly exercising the office without any right thereto, and was an usurper and therefore Doyle, by recognizing him, was wrongfully exercising the duties of his office. Were it conceded that such was the fact, have we jurisdiction to restrain him by injunction? It seems to us that we have not, for the very reason that the wrong complained of involves the inquiry into the legality of the election of Patrick J. Cain, and we would be obliged, before we could convict him of any wrong in that respect, to determine that Patrick J. Cain was not duly elected and that Peter Lenahan was properly elected. This we clearly cannot do, as we understand the authorities. It is not disputed that Doyle is a legal incumbent of the office of poor director, and there is therefore, for any abuse of his office, a clear and adequate remedy at law. The act of assembly which creates the poor district and the office in controversy, and which is found in pamphlet laws of 1869, page 1228, in section 3, provides : " That the court of quarter sessions shall have power to remove any director for gross neglect of duty or other misconduct as director, upon the petition of thirty or

more of the freeholders of said township or borough upon hearing of the complaint contained in said petition after a reasonable notice to the director complained of." Here is a plain remedy given by the act of assembly, which ought to be pursued if Mr. Doyle is guilty of abusing his office by doing something that he ought not to do. His acting in connection with Patrick J. Cain and recognizing him as a poor director is an unlawful exercise of his office, if Cain is a mere usurper, and therefore would not only be covered by the provision of the act of 1869 referred to, but there would also be a remedy by writ of quo warranto. "The words of the quo warranto act are broad enough to include the power of inquiry into the abuse of a township office by a legal incumbent—it is an unlawful exercise of the office:" Commonwealth v. McWilliams, 1 Jones, 61. These remedies at law are in our judgment sufficient to reach the case in controversy, if Doyle can be adjudged guilty of any wrong in recognizing Patrick J. Cain as a poor director and acting in conjunction with him.

As to the prayer in the bill to restrain C. G. Murphy from attempting to collect any taxes or moneys due, owing or to become due the said poor district, we think we are clearly without jurisdiction to grant the relief prayed for. The only remedy that we know of in such case is to try his title to the office by writ of quo warranto. Before a court of equity can take jurisdiction in a case of this kind it seems to us clearly necessary that the right or title of the party to the office should first be settled by proceedings at law.

In the case of the appeal of Gilroy and others, 100 Pa. 5, a bill was filed in which it was alleged that complainants were duly elected school directors of the borough of Archbald; that they had met and organized; had all the books and papers of the board; had levied a school tax, issued a duplicate, placed the same in the hands of the collector; employed teachers, and directed the schools to be opened. It was further averred that Richard Gilroy and others had contrary to law declared themselves school directors of said borough and organized themselves; that they had taken possession of the school buildings, levied the school tax and threatened to collect said tax and to keep possession of the school buildings. The bill further averred that the complainants were without adequate remedy at law and

prayed for a preliminary injunction to restrain the defendants, etc., from exercising the office or performing the duties of school directors, etc. The court below issued and continued a preliminary injunction. On appeal the decree of the court below was reversed. Justice GREEN, delivering the opinion of the court, on page 7, says: "The practical controversy is over the title of the office of school director of the borough of Archbald. The bill alleges the title of the plaintiff and denies the title to the defendant, and prays for an injunction to restrain the latter from exercising the office or performing the duties of school director in said borough. In Hagner v. Heyberger, 7 W. & S. 104, it was held that an injunction will not be granted to restrain an individual from exercising the office of school director who has accepted the office of commissioner of an incorporated district. The question of his right to exercise the duties of his office must be tried by proceedings on a writ of quo warranto, which affords an ample legal remedy." "There is," says the learned court in that case, "an adequate and exclusive remedy at law in such case by a writ of quo warranto." The same principle was held in the case of Updegraff v. Crans, 47 Pa. 103, where a bill was filed to restrain certain officers of the borough of Williamsport, whose alleged appointment by the town council was illegal; and the court held in that case that "the remedy is at law by quo warranto and to be invoked after entering into or exercise of authority under their appointment."

It is not necessary, we think, to multiply authorities to show that there is no remedy in equity in this case, but that there is an adequate remedy at law, which must first be invoked. As is well said by the court in Hagner v. Heyberger, supra, "Equity has no jurisdiction with regard to the election or amotion of corporators; nor in case of a public officer de facto of a municipal character . . . . when there is a plain legal remedy provided by act of assembly of nearly contemporary date, by means of the writ of quo warranto, which can probe the disease and eradicate it whilst the most an injunction could do is to film it over. In addition to this the difficulty meets us that it would be determining conditionally the rights of a person who claims the office by color of title and exercises it de facto, which it has frequently been decided cannot be done. To bring this case to

a fair trial you must proceed directly and frame the issue so as to try it; and in that trial of that right by quo warranto the law secures to the defendant the privilege of a trial by jury in relation to the contested facts which would be taken away by the proceeding by injunction."

As to Frank Brennan, we are asked to restrain him, his agents and employees, from recognizing Bernard J. Doyle and Patrick J. Cain as the constituted authority of the poor district of Conyngham township. In other words it is asking us to restrain him from recognizing the board by which he was elected, and therefore to decide which of these parties is the legal board. We have shown sufficiently that we cannot determine this question, in view of the fact that we cannot determine in this proceeding which of the contestants, Patrick J. Cain or Peter Lenahan, was duly elected.

After carefully considering this case, we think that under the law we cannot restrain the respondents as prayed for until after the title to the offices in controversy shall be settled by proper proceedings at law. If the respondents should undertake wrongfully to dispose of any property of the poor district, or do any act inconsistent with their duties as poor directors, they may in such case be restrained, but as nothing as yet has been done by them to justify our interference, we refuse to continue the preliminary injunction heretofore granted.

Therefore, now, to wit, September 19, 1895, after due consideration the plaintiff's bill and preliminary injunction granted thereon are dismissed at costs of complainants.

*Error assigned* was decree; (1) dismissing preliminary injunction; (2) dismissing bill in equity.

*William Wilhelm, Charles G. Barkley* and *L. S. Wintersteen* with him, for appellants.—The proceeding by bill in equity is sustained by, Ewing v. Thompson, 43 Pa. 372; Brightly's Leading Cases on Elections, 573; Kerr v. Trego, 47 Pa. 292; Miller v. Lowry, 5 Phila. 202; People v. Vail, 20 Wend. 12; People v. Van Sylck, 4 Cowen, 297; Brightly's Leading Election Cases, 581; State v. Johnson, 17 Ark. 407.

*James Scarlet, John G. Freeze* with him, for appellees.—The

. court was without jurisdiction to entertain the bill: Com. v. McWilliams, 11 Pa. 61; Brown's App., 66 Pa. 155; 1 Beach on Modern Equity Jur. sec. 640; Kerr v. Trego, 47 Pa. 292; Campbell v. Taggert, 10 Phila. 443; Blood v. Crew Levick Co., 171 Pa. 339; Saunders v. Racquet Club, 170 Pa. 265; Wilson v. Buchanan, 170 Pa. 14; Booher v. Browning, 169 Pa. 18.

PER CURIAM, April 27, 1896:

All the material facts of this somewhat novel proceeding in equity, together with the reasons which prompted the dissolution of the preliminary injunction and dismissal of the bill, are fully set forth in the opinion of the learned president of the 29th judicial district, who specially presided at the hearing, and need not be repeated. We are satisfied from an examination of the record that the findings of fact as well as the legal conclusions drawn therefrom are substantially correct, and fully warranted the dismissal of the bill. Further discussion of the questions involved would serve no useful purpose. The decree is therefore affirmed on the opinion referred to, and the appeal is dismissed at plaintiffs' costs.