# Dayton, Appellant, v. Carter.

206    491
215    608

*Church law—Presbyterian church—Title to property—Trustees—Session.*

In the Presbyterian church the legal title to church property is vested in the trustees of the congregation and not in the session. The function of the session is to exercise control over the spiritual affairs of the congregation, but not over its temporalities. The custody and care of the property pertain to the trustees, for the uses and purposes for which they hold the trust. Chief among these is the maintenance of public worship by the congregation; and in so far as that purpose is concerned, the trustees should respect the wishes and action of the session as to the use and occupation of the house of worship.

In the Presbyterian church a presbytery regularly convened at a stated meeting has the constitutional right to direct elders to cease acting without citing them to appear and be heard in their own behalf.

A meeting of a session for the election of elders is invalid where the pastor of the church was not present, and no one was appointed by him to preside. Such a meeting cannot invalidate the regular annual elections held at the proper time and place and called and conducted according to the custom of the congregation.

Argued March 18, 1903. Appeal, No. 21, Jan. T., 1903, by plaintiffs, from decree of C. P. Lycoming Co., Dec. T., 1900, No. 2, dismissing bill in equity in case of John E. Dayton et al. v. James Carter et al. Before MITCHELL, DEAN, FELL, BROWN and POTTER, JJ. Affirmed.

Bill in equity for an injunction. Before McCLURE, P. J., specially presiding.

The material averments of the bill and answer and the material facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*W. M. Stephens* and *H. T. Ames*, of *Ames & Hammond*, for appellants.—In church organizations, those who adhere and submit to the regular order of the church, local and general, are the true congregation and corporation if incorporated. The title to the church property of a divided congregation is in that part of it which is acting in harmony with its own law

and the ecclesiastical laws, usages, customs and principles which were accepted among them before the dispute began, are the standards for determining which party is right: Winebrenner v. Colder, 43 Pa. 244; Schnorr's App., 67 Pa. 138; Krecker v. Shirey, 163 Pa. 534; Kerr v. Trego, 47 Pa. 292; St. Paul's Reformed Church v. Hower, 191 Pa. 306.

The test in this case is which part maintained the ecclesiastical organization of the denomination: Krecker v. Shirey, 163 Pa. 534–550.

All the members of the church are bound by the constitution and discipline of the church as well as all church tribunals: McAuley's App., 77 Pa. 397; Schlichter v. Keiter, 156 Pa. 119; Krecker v. Shirey, 163 Pa. 534.

The decree of a church judicatory is binding only upon all when it has acted within the scope of its authority and has observed its own organic forms and rules: Kerr's App., 89 Pa. 97.

The election of appellees at the church building by their adherents being illegal, they are not entitled to the possession and control of the church building for any purpose; Schlichter v. Keiter, 156 Pa. 119.

The decree of a church judicatory is binding only when it is affirmatively shown that it has acted within the scope of its authority and has observed its own organic forms and rules: Kerr's Appeal, 89 Pa. 97–112, 113.

*John G. Reading*, with him *John T. Fredericks*, for appellees. —The laws of the ecclesiastical body will be recognized and enforced by the civil courts when not in conflict with the constitution and laws of the state. A sufficient reason for this is that they have been made or assented to by the parties, who have agreed with each other by the act of uniting with the body to be governed by its laws and usages: Tuigg v. Treacy, 104 Pa. 493.

Upon questions arising under the discipline, as upon those arising under the articles of faith, the decisions of the ecclesiastical courts are ordinarily final, and they will be respected and enforced by the courts of law: German Reformed Church v. Seibert, 3 Pa. 282; O'Hara v. Stack, 90 Pa. 477; Schlichter v. Keiter, 156 Pa. 119.

OPINION BY MR. JUSTICE POTTER, July 9, 1903:

On October 13, 1900, John E. Dayton and seven others filed a bill in equity against Rev. James Carter and seven others.

The complainants alleged that they were the legal session, and elders elect, of the Presbyterian Church of the Covenant of Williamsport, Pa.; that the said church or congregation is in ecclesiastical connection with and is subject to the Form of Government and Discipline of that body of Christains known as the Presbyterian Church in the United States of America; that under the provisions of its fundamental law, there are four church judicatories; the session of each congregation or church, the presbytery, the synod, and the general assembly, having jurisdiction in the order given, and each higher judicatory having appellate jurisdiction over the inferior; that in 1844 the Second Presbyterian Church and Congregation of Williamsport was incorporated, to be under the watch and care of the then presbytery of Harrisburg, synod of Pennsylvania and general assembly of the Presbyterian Church in the United States of America; in 1897 the name of the said corporation was duly changed to the Presbyterian Church of the Covenant of Williamsport and for a long time past the said church has been attached to the Presbytery of Northumberland, Synod of Pennsylvania; that certain real estate in the city of Williamsport has been conveyed to the said church and a church building erected thereon with funds subscribed by members of this church and money realized from the sale of another lot of land belonging to the corporation; that on November 8, 1899, and prior thereto, the complainants with one Meyer, were the elders and elders elect of said church and, as such, moderated by Rev. James Carter, pastor of the church, constituted the legal session of the church; that, on May 22, 1899, the presbytery of Northumberland, which had assembled for the purpose of receiving and acting upon, the resignation of Rev. James Carter as pastor of said church without notice to and in the absence of complainants and in violation of their constitutional rights and of the Form of Government and Discipline of the Presbyterian Church, ordered complainants to cease to act as elders and directed the church to meet on May 31, for the election of a session, with the understanding that the present session

should continue to act until the newly elected session was prop-
erly constituted; that the complainants appealed to the synod
of Pennsylvania which dismissed their complaint and recom-
mended that the election of elders be held on November 8, 1899;
that complainants then appealed to the general assembly,
which in May, 1900, sustained the appeal and remanded the case
to the synod with instructions to send it back to the presbytery,
for reconsideration and action; that November 8, 1899, and
April 4, 1900, at meetings which were illegally called and con-
ducted, a portion of the membership of the church, attempted
to elect the defendants, with the exception of Rev. James Carter,
as ruling elders of the said church; that the pastor has ordained
and installed the other defendants as elders and has called them
to meet as a session, and moderated their alleged sessious; that
the defendants have unlawfully assumed to act as the session of
the said church and have conspired and colluded with other mem-
bers of the church to refuse to recognize the complainants as a
lawful session; and that by the action and conduct of the
faction of the church who elected the defendants as elders,
there was organized a new church and congregation which are
in rebellion against the lawful authorities of the Presbyterian
Church, and which have taken possession of the property of
the church and have excluded complainants and their adherents
therefrom, unless they will submit to the authority of de-
fendants as the true and legal session of said church. The
complainants prayed for an injunction restraining the defend-
ants.

1. From acting as a session for the Church of the Covenant.

2. From doing anything to prevent members of the church
from recognizing the plaintiffs as a legal session.

3. To command the defendants to surrender the church prop-
erty to the plaintiffs as a legal session.

The defendants demurred to the bill, but the demurrer was
overruled by the court (ARCHBALD, J., sitting specially).

The answer admitted that complainants, with L. I. Meyer,
were the legal session of the church up to November 8, 1899,
when, at a duly convened meeting of the members of the church,
other persons were elected elders; and alleged that at that
meeting and on April 4, 1900, the defendants, were legally
elected elders of the said church, that they were the legal

session of the church and were not in rebellion to the authorities of the Presbyterian Church, and that on September 24, 1900, the presbytery had denied representation to the complainants and had recognized the defendants at the legal session of the church; on October 17, 1900, the synod had dismissed an appeal from this action and an appeal had been taken to the general assembly to be held in May, 1901. Defendants also averred that the courts of Pennsylvania had no jurisdiction of the subject-matter of the bill, so long as the ecclesiastical courts of the Presbyterian Church were considering the same.

Upon the trial it appeared that the Church of the Covenant observed the rotary or limited term system of electing elders, by which the elders were elected in groups annually in the month of April for terms of three years. In April, 1900, the terms of three of the complainants expired; in April, 1901, the terms of two others, and in April, 1902, the terms of the three remaining.

In April, 1900, and April, 1901, meetings of the congregation were held of which the customary notice was given by the pastor, and other persons than the complainants were elected to serve as elders. It further appeared that on December 12, 1900, and April 3, 1901, certain members of the congregation met at a place other than the church and re-elected the complainants as elders.

The court below (McCLURE, J., sitting specially) held that the action of the presbytery on May 22, 1899, ordering the complainants to cease to act as the session of the church was illegal and of no effect, but that the elections held in April, 1900, and April, 1901, were regular and valid, and those held by the complainants and their adherents, away from the church, were irregular and void. The court further held that, inasmuch as at the time of the final decree, January 3, 1903, the terms of all the complainants had expired and they had not been re-elected, they had no longer any standing to maintain their bill. The bill was therefore dismissed, but the defendants were required to pay the record costs.

From this decree the complainants appealed.

It is a serious question whether the court below had any jurisdiction in equity to try the real issue as disclosed by the allegations of the bill. While it is true that one of the prayers

in the bill seeks to compel the surrender of the property of the church to the plaintiffs, as the legal session, yet the real controversy is over the validity of the election of the defendants as elders of the church. If they were lawfully elected, they constitute the session, and the plaintiffs have no case and are not entitled to exercise such control of the property as is claimed. As a matter of fact, the legal title to the property is vested in the trustees of the congregation and not in the session. The function of the session is to exercise control over the spiritual affairs of the congregation, but not over its temporalities.

The custody and care of the property pertains to the trustees, for the uses and purposes for which they hold the trust. Chief among these is the maintenance of public worship by the congregation; and in so far as that purpose is concerned, the trustees should respect the wishes and action of the session as to the use and occupation of the house of worship.

We assume therefore that in this case, the complainants in seeking the control of the property, have in mind such control only as the session is entitled to exercise in supervising the spiritual interests of the congregation. The title of the plaintiffs to the office of elders is therefore the real question at issue. The legality of their own election as elders is asserted and that of the defendants is alleged to have been unlawful. The right of the session to control in any way the property of the congregation is only incidental to the right to the office of elder. But this court has decided that a bill in equity to compel the surrender of the property of a corporation cannot be sustained where it appears that the real question in controversy is the validity of the election of the defendants as officers of the corporation. In such a case quo warranto is the appropriate remedy: Bedford Springs Co. v. McKeen, 161 Pa. 639. In that case, Mr. Justice GREEN says on page 642: "In Conn. v. Graham, 64 Pa. 339, we held that quo warranto is the proper remedy against persons usurping the office of trustees of a chartered church. It was a proceeding to test the title of the whole board and turned upon the valitidy of their election."

And in Nolde's Appeal, 2 Mona. 169, 175, the principle is thus stated: "The question presented simply involves the determination of the right to the office and that question with-

out more (and there is nothing else here) cannot be determined by a bill for an injunction. The rule of law on this subject is that the right of an officer in a corporation will not be tried upon an application for an injunction, nor will one who has been wrongfully removed from such office be restored by injunction. A court of equity will not assume jurisdiction in such a contest, where there is nothing involved which calls for the intervention of equity: High on Injunctions, 781, 789; Hilliard on Injunctions, 403."

A bill in equity, praying an injunction, will not lie to determine which of two parties is entitled to the office of school director, or other public office; there is an adequate and exclusive remedy at law in such case by writ of quo warranto: Gilroy's Appeal, 100 Pa. 5; see also Goldsworthy v. Boyle, 175 Pa. 246, and Brower v. Kantner, 190 Pa. 182.

In overruling the demurrer in this case, the court below referred to Long v. Harvey, 177 Pa. 473, as authority for holding that the allegations of complainants that they were displaced from the eldership of the church in violation of the fundamental law of the general ecclesiastical body to which they belong, involving the loss of the control and management, not only of the spiritual affairs of the church, but to a certain extent of its property also, would, if sustained, be ground for equitable relief. But the lack of ground for exercising equitable jurisdiction does not seem to have been suggested or considered in that case. In the present controversy, when the demurrer was considered, there was of course no evidence before the court. In the testimony which has since been taken, nothing appears to show that any attempt was made to divert the church property from the use to which it was originally dedicated, or to exclude the complainants or their adherents from lawful participation in congregational government. The controversy is only as to which of the parties constitute the rightful session of this particular congregation. The question of jurisdiction was not, however, pressed in the argument, and the fact that the court below dismissed the bill, after a full consideration of the merits of the controversy, makes the inquiry into the jurisdictional facts of less importance.

In considering the merits, two questions arise concerning

the ecclesiastical legality or constitutionality of the action of the presbytery of Northumberland, in directing the session of the Church of the Covenant to cease acting when a new session has been elected and constituted.

1. Does a presbytery, regularly convened at a stated meeting, have the constitutional right to direct elders to cease acting without citing them to appear and be heard in their own behalf?

This question has been answered in the affirmative by the general assembly, on the authority of chapter 10, section 8, form of government: "Presbytery has power to visit particular churches . . . . and to order whatever pertains to their spiritual welfare." Under this section the right of the presbytery upon its own motion to direct an elder to cease to act, was upheld, and the trial court followed the ruling. See Moore's Digest, page 538.

2. Had this pro re nata meeting, called for a special purpose, the legal or constitutional authority for directing the complainants to cease acting?

Form of government, chapter 10, section 10, after stating how a special meeting is to be called, reads as follows: "Nothing shall be transacted at such special meeting besides the particular business for which the judicatory has been thus convened." The call for this particular meeting has two specifications, viz: first, "to receive the resignation of the Rev. James Carter;" second, "to take such action as may be deemed advisable in the premises."

The real constitutional question is this: Was the direction of the presbytery that the session should cease acting so vitally connected with the presbytery's action on the resignation of the Rev. James Carter as to be rightly considered a part of "such action as may be deemed advisable in the premises?"

The synod of Pennsylvania, when dismissing the appeal of John E. Dayton and others, answers this question definitely in the affirmative, as it says: "No parties have been aggrieved by the decision," and "the Presbytery acted within its constitutional rights." The general assembly, however, did not affirm this action of the synod, but sustained the appeal of John E. Dayton and others. It failed, however, to give any

definite judgment on the question of the constitutionality of the action of presbytery, nor did it definitely reverse that action ; it merely remanded the case to the synod of Pennsylvania and directed the synod to send the case back to the presbytery of Northumberland for reconsideration and action, without pointing out wherein the error lay. This action of the general assembly in sustaining the appeal in this peculiar way was an inadequate and unsatisfactory ruling, as the failure to pronounce clearly upon the issue involved led only to additional complaints and appeals.

But the court below, in seeking to interpret and follow the decision of the general assembly, has declared the action of the presbytery at the pro re nata meeting illegal and invalid, and the defendants have accepted this finding of the court.

Two other questions remain for consideration :

1. Were the elections of elders at meetings held in the Church of the Covenant at the regular times, and moderated by the pastor, legal and valid ?

2. Did the members of the old session cease to be active elders at the expiration of their terms of service, in April 1900, 1901 and 1902, or were they legally re-elected and installed ?

The complainants admit that the usual elections were held by the congregation in April of each year after two regular announcements from the pulpit at the usual place of worship. These meetings were moderated by the pastor of the church, and at them defendants were elected as elders.

On March 27, 1900, the old session attempted by a resolution to postpone the annual election of elders from the 4th day of April following, until after the meeting of the general assembly or its final decision. The meeting at which they attempted to take this action was held at the residence of one of the elders in pursuance of a notice published in a daily newspaper, and the pastor of the church was not present, one of the elders acting as moderator pro tem.

The requirement of the form of government is express, that the pastor of the congregation shall always be the moderator of the session ; except when for prudential reasons, it may appear advisable that some other minister should be invited to preside ; in which case, the pastor with the concurrence of the session, is to invite such other minister to preside.

No good reason is shown why the pastor did not preside at this meeting. It was, therefore, irregular and its action was ineffective. If the pastor refuses to attend the meetings of the session or to name another minister to moderate them, the remedy is by complaint to the presbytery. Moreover, the regular annual election of elders was a matter for the congregation and was not a sessional matter at all. The government of the Presbyterian Church is republican in form, and the elders are simply the representatives of the people, to be chosen by them in the mode most approved, and in use in that congregation. As the trial court says in its opinion, " Every Presbyterian Church is a law unto itself in the election of elders and deacons, limited only to the qualification of the persons elected who must be male members in full communion."

There can be no question that under the rotary or limited term system, the terms of the members of the old session as active elders were definitely fixed, and that these terms expired at the annual elections held in April, 1900, 1901 and 1902.

The trial court was entirely correct in holding that the efforts of the old session to postpone the meeting of the congregation for the election of elders could not invalidate the regular annual elections held at the proper time and place, called and conducted according to the custom of that congregation. He was equally right in holding that the elections held by the plaintiffs and their adherents at the Y. M. C. A. rooms were irregular and not in accordance with the custom of the church. The announcements were not made from the pulpit of the church, but in the Y. M. C. A. building. They were made not by the pastor, but by certain ministers who officiated from time to time at the meetings held in the Y. M. C. A. rooms.

The evidence shows clearly that the real reason for holding services and meetings at the Y. M. C. A. rooms and elsewhere, was the unwillingness of the plaintiffs and their adherents to recognize and submit to the authority of the defendants as the true and legal session of the church.

We agree with the conclusion reached by the court below that the elders elected at the meetings held in the church, in April, 1900, 1901 and 1902, and regularly installed thereafter, constituted the real session of the church.

The assignments of error are overruled, this appeal is dismissed, and the decree of the court below, dismissing the bill, is affirmed.