## Meek v. Rizzo

*H. Patrick Swygert, Mercer D. Tate, Nelson Diaz, Sylvia Meek,* and *Earl W. Trent, Jr.,* for plaintiffs.

*James L. J. Pie,* for Hon. Frank L. Rizzo and members of Educational Nominating Panel.

*Austin J. McGreal,* for George P. Stahl.

*Edward D. McDevitt,* for Felice Stack.

*Lawrence I. Boonin,* for Mrs. Lawrence Boonin.

CAVANAUGH, *J.*, February 19, 1976 — Plaintiffs are nine residents and taxpayers of Philadelphia who brought this action for injunctive and declaratory relief against Mayor Frank L. Rizzo, the Educational Nominating Panel of 1975, and the three persons nominated by the panel whom the mayor subsequently appointed to the Board of Education for the Philadelphia School District. The complaint challenges the composition of the panel on the grounds that the qualifications of certain of its members allegedly failed to conform to the requirements set forth in the Educational Supplement to the Home Rule Charter. Plaintiffs ask that defendant Rizzo be required to appoint immediately a new panel that will conform to the law. They further ask that the panel's work, specifically the recommendations it made to the mayor, be declared null and void because its proceedings were conducted in violation of the Sunshine Law: Act of July 19, 1974, P.L. 486 (No. 175), 65 P.S. §261, et seq. They also seek to enjoin the panel from conducting any further business and to restrain the panel's nominees from serving as members of the Board of Education.

The Educational Supplement to the Philadelphia Home Rule Charter requires that the Mayor appoint thirteen persons who will serve as members of the nominating panel. The members, who shall serve for terms of two years, must be registered voters of the City. The mayor may appoint four of the members from the "citizenry at large." Nine of the members, however, must be the highest ranking officers of specified types of community organizations and institutions. After the panel considers the qualifications of various persons for positions on the Board of Education, it forwards its

recommendations to the mayor who must then appoint the nominees to the board from either the first or second list of names submitted.

After the complaint was filed on July 21, 1975, and a rule was granted on defendants to show cause why a preliminary injunction should not issue, the City Solicitor's office filed preliminary objections to the complaint in equity on behalf of the mayor and the members of the Educational Nominating Panel. The City Solicitor, in his brief in support of the preliminary objections, argued that plaintiffs' case was actually a challenge to the right of the panel members to hold their offices and that quo warranto was plaintiffs' sole remedy. He further argued that plaintiffs lacked the requisite standing to procure the Writ.

Evidentiary hearings and oral argument on the preliminary injunction were held on August 12 and 18, 1975. After considering the preliminary objections and after reviewing the case law on quo warranto, the court entered a memorandum opinion and order on October 8, 1975, which dismissed the complaint and allowed plaintiffs 20 days in which to amend it and to plead at least one of four allegations: (1) the Attorney General or district attorney is unwilling to act in this case; (2) that they, the plaintiffs, have a special interest in the composition of the Educational Nominating Panel, as opposed to the general public interest; (3) that they have been specially damaged by the acts of defendants, or (4) that special circumstances exist in this case so as to justify an exception to the general quo warranto rule.

Plaintiffs' amended complaint, which was accepted for filing by an order of the court dated November 26, 1975, alleged that both the district

attorney and the Attorney General had declined in writing to institute quo warranto proceedings against defendants. By a subsequent order of December 3, 1975, defendants were instructed to file preliminary objections or other responsive pleadings, not later than December 17, 1975. The City Solicitor and the attorneys for the three Board of Education appointees each filed preliminary objections to the amended complaint. A hearing on these objections was held on December 22, 1975.

After reconsidering the problem of standing in this case, we are constrained to adopt the position of defendants that plaintiffs lack the requisite standing to challenge the right of defendants to hold their offices. We are furthermore inclined to agree with the argument of the deputy city solicitor that the doctrine of de facto authority operates to deny plaintiffs relief. Because we base our decision on these two issues, we do not reach the question of whether the panel's meetings were held in violation of the Sunshine Law.

Since plaintiffs' complaint is basically a challenge to the right of the members of the nominating panel and its nominees to the Board of Education to hold their offices, it properly sounds in quo warranto. This writ is the exclusive remedy to try title to a public office and standing to seek it will lie only in a public prosecutor, or a person with a special interest in the case, or a person who has been specially damaged: Mayer v. Hemphill, 411 Pa. 1, 190 A. 2d 444 (1963); DeFranco v. Belardino, 448 Pa. 234, 292 A. 2d 299 (1972). Since the case law requires that a private suitor have a special interest or demonstrate special damages, the refusal of the Attorney General and the district attorney to take action cannot, of its own force, oper-

ate to confer standing on plaintiffs. Plaintiffs have asserted only the general interest of the citizenry in desiring obedience to the law and quality in education. Under the rule of Mayer and DeFranco, plaintiffs' general interest in the composition of the panel and Board of Education is insufficient to allow them to prosecute the suit.

Furthermore, plaintiffs cannot bring themselves within any of the three recognized exceptions to the narrowly circumscribed remedy of quo warranto. Mayer and DeFranco recognized exceptions to the rule in three situations: (1) quo warranto does not always furnish an adequate and full remedy; (2) the wisdom of applying a remedy which will avoid a multiplicity of suits, and, (3) the paramount right of the public to have a surer and more adequate remedy to restrain wrongful acts by a public official, including the unlawful expenditure of public money: Mayer, supra, at p. 7. We find that quo warranto would furnish an adequate remedy if plaintiffs had standing to procure it and, we further find that this case does not involve a multiplicity of suits. In weighing the serious official wrongdoing in DeFranco, where plaintiff was denied standing, with the alleged wrongdoing herein, we conclude that the case does not present the extraordinary circumstances that require an exception to the general rule.

In the League of Women Voters of Lower Merion v. Lower Merion Township Board of Commissioners, 451 Pa. 26, 301 A. 2d 797 (1973), there is language that suggests that the failure of the public prosecutors to sue in quo warranto might give rise to an exception to the general rule and will allow a suit in equity. Nonetheless, we agree with the position taken by the City Solicitor in his brief in sup-

port of his preliminary objections to the amended complaint. In Lower Merion, plaintiffs alleged wrongful expenditures of public funds and this allegation alone is sufficient to bring the case within the third exception to the general quo warranto rule.

Even if plaintiffs had standing to challenge defendants in quo warranto, the doctrine of de facto authority would apparently deny them the relief they request. This theory was recently reaffirmed in the case of State Dental Council and Examining Board v. Pollock, 457 Pa. 264, 318 A. 2d 910 (1974). In that case, a dentist whose license the Examining Board had suspended for 30 days challenged the method of selection of the members of the board as mandated by The Administrative Code of April 9, 1929, P.L. 177, art. IV, sec. 414, 71 P.S. §124. He argued on appeal that the statute violated the Pennsylvania constitutional prohibitions against special legislation (Art. III, §32), and delegation of gubernatorial appointment power (Art. IV, §8). The Attorney General conceded the merit of appellant's constitutional arguments but disputed his standing to raise the issue of the legitimacy of the board's composition in his appeal. Even though appellant had a direct, personal stake in the outcome of the appeal, the Supreme Court found that he lacked standing to challenge the composition of the Board:

"The Commonwealth argues that members of the Dental Board are de facto officials whose actions are legally binding until they are ousted from office by an action in quo warranto. Recognizing that an unlimited right to question collaterally the title to office would impede the orderly operation of government, we have ruled that the official acts of

one who acts under the color of title to an office should be given the same effect as those of a de jure official. 'From an early date the appellate courts of this Commonwealth have held steadily to the rule that "the acts of public officers de facto coming in by color of title, [whether or not entitled de jure], are good so far as respects the public, but void when for their own benefit", and it is equally well settled that attacks upon the right of such incumbents to serve, must be made by the Commonwealth, in a direct proceeding for that purpose, and cannot be made collaterally': Com. v. Snyder, 294 Pa. 555, 559. . . ." Commonwealth ex rel. Palermo v. Pittsburgh, 339 Pa. 173, 177, 13 A.2d 24, 26 (1940).

"The doctrine springs from an understandable fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question. (If the question [of right to office] may be raised by one private suitor it may be raised by all, and the administration of justice would under such circumstances prove a failure.) Coyle v. Commonwealth, 104 Pa. 117, 130 (1884). The de facto doctrine seeks to protect the public by ensuring the orderly functioning of the government despite technical defects in title to office." 457 Pa., at 267-268.

The court in Pollock clearly chose to support the policy of minimizing litigation aimed at questioning the actions of officials who hold their offices despite technical defects in title thereto. Although the Commonwealth may challenge such officials directly, the private suitor may not unless he can demonstrate the requisite standing necessary to sue in quo warranto. Until a de facto official is

ousted by an action in quo warranto, his official acts must be accorded de jure effect subject to the one condition that in order to receive the protection of the law, he must act for the public benefit. If he acts for his own benefit while in office, his actions will be considered void.

In this case there is no allegation whatever that defendants acted for their own gain or benefit. Plaintiffs have alleged merely technical defects in the qualifications of defendants for the offices they hold. Under the authority of Pollock, plaintiffs have no standing to challenge the right of defendants to hold their offices and the actions of the panel members must be accorded de jure effect

And now, February 19, 1976, the preliminary objections of defendants are sustained and the complaint is dismissed with prejudice.