## Commonwealth ex rel. Palermo *v.* Pittsburgh, Appellant, et al.

174

Argued March 18, 1940. Before SCHAFFER, C. J.,
MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*John R. Bentley,* Assistant City Solicitor, with him
*Wm. Alvah Stewart,* City Solicitor, for appellant.

*Julia M. Doyle,* with her *Dennis J. Mulvihill,* for appellee.

OPINION BY MR. JUSTICE BARNES, May 6, 1940:

This is a mandamus proceeding instituted at the relation of Joseph Palermo, to require his reinstatement to the position of clerk in the Bureau of Building Inspection, Department of Public Safety of the City of Pittsburgh. The sole issue involved is the validity of his appointment to the position from which he was dismissed.

The facts are not in controversy. It appears from a stipulation in the record that prior to his appointment, petitioner had taken a competitive examination for clerk, grade 2, given by the Civil Service Commission of the City of Pittsburgh, and had received a passing grade of 95.5 per cent. On August 4, 1936, at the request of George H. Neubauer, who was then acting as Director of the Department of Public Safety, the commission certified to him a list of names of persons eligible for appointment to the position of clerk in the bureau of building inspection. Petitioner's name was included in this list and he received the appointment on August 5, 1936, at a salary of $135.83 per month. He filed the bond with surety, as required by city ordinances, and entered upon the performance of his duties.

On July 16, 1936, a vacancy existed in the office of director of public safety of the City of Pittsburgh. On that day William N. McNair, mayor of the city, appointed George H. Neubauer as director, and gave written notice thereof to city council. Neubauer took the oath of office and served in that capacity until August 6, 1936, when city council held a special meeting and voted to refuse confirmation of his appointment. The petitioner Palermo received his appointment to the clerkship during the interval that Neubauer was acting as director of the department.

Mayor McNair finally submitted to city council the name of George E. A. Fairley as director, who was confirmed by council on September 4, 1936. The petitioner received a notice from Director Fairley on October 16,

1936, that he was "instructed by higher authority" to dismiss him from his position, without stating any other reason for the action taken. He then appealed to the civil service commission, and requested a hearing upon the grounds of his dismissal. The commission replied that he had "no legal standing to the position," and refused to grant a hearing.

Thereafter the present petition for the writ of alternative mandamus, directed to the city and its officials, to require the reinstatement of petitioner, was filed in the court below. The answer to the writ set forth that the appointment of petitioner was void for the reason that during the time Neubauer occupied the office of director, he was without power to make a valid appointment in the department.

A primary issue in the court below was the status of Neubauer during the time that he occupied the office of director. The record shows that the mayor attempted to make a "recess appointment" to the position, and the case turned upon the question whether city council was in recess on July 16, 1936, when Neubauer was appointed. On behalf of the city it was contended that there was at that time no recess of council within the meaning of the Charter Act,* and therefore Neubauer was not legally entitled to hold the office to which he was named by the mayor, and to appoint petitioner a clerk in the department.

The court below reached the conclusion, based principally upon the facts in the stipulation and upon the official minutes of city council received in evidence, that council was in recess on July 16, 1936, when the ap-

---

* See Act of March 7, 1901, P. L. 20, Art. I, Section 2, as amended by the Act of June 20, 1901, P. L. 586. This Act gives to the Mayor the power, during recess of Council, to fill all vacancies in offices to which he may appoint, subject to the approval of Council at its next session. The office of Director of Public Safety is designated as one to which the Mayor may appoint with the consent of Council.

pointment of Neubauer was made; that he was a *de jure* director of the department; that the appointment of petitioner on August 5, 1936, was valid, and that he could not be dismissed from his position except in the manner provided by the Civil Service laws. From the order of the court directing petitioner's reinstatement and the payment to him of back salary from the date of his dismissal, the City of Pittsburgh has taken this appeal.

In our opinion it is unnecessary to determine the question whether Neubauer was a *de jure* officer, under a valid recess appointment by the mayor. It cannot be disputed that his status was at least that of a *de facto* officer at the time when he appointed petitioner a clerk in the service of the city. In no sense could he be considered a mere usurper or volunteer. He received an appointment from the mayor, was sworn, and remained in open and notorious possession of the office of director from July 16 to August 6, 1936. A *de facto* officer is one who is in possession of an office and discharging its duties under color of authority, and by "color of authority" is meant authority derived "from an election or appointment, however irregular or informal": *Krickbaum's Contested Election*, 221 Pa. 521, 527.

It follows that the official acts of Neubauer in the discharge of the duties of the office which he occupied cannot be attacked in the manner here attempted. From an early date the appellate courts of this Commonwealth have held steadily to the rule that " 'the acts of public officers *de facto*, coming in by color of title, [whether or not entitled *de jure*], are good so far as respects the public, but void, when for their own benefit'; and it is equally well settled that attacks upon the right of such incumbents to serve, must be made by the Commonwealth, in a direct proceeding for that purpose, and cannot be made collaterally": *Com. ex rel. v. Snyder*, 294 Pa. 555, 559. See also *Keyser v. M'Kissan*, 2 Rawle

139; *King v. Phila. Co.*, 154 Pa. 160; *Jordan v. Washington & C. Ry. Co.*, 25 Pa. Superior Ct. 564, 566.

The position of director was held by Neubauer under color of title for a period of at least twenty-two days without any challenge of his right thereto. During that period his official acts were valid as to strangers and the public, who were not bound to investigate his title to the office. It is conceded on the part of the city that the acts of a *de facto* officer are valid generally, in so far as they affect third persons and the public, but it urges that an exception should be recognized with regard to the appointment or selection of subordinates by such an officer. We can see no basis for such distinction where the appointment is one regularly made in the course of an orderly administration of public affairs. The selection of subordinates is a part of the duties of an executive officer. If the person chosen is duly qualified and the appointment is required for the proper conduct of official business, the act of the appointing officer is in the public interest, and therefore valid, whether his status be *de jure* or *de facto*.

Moreover, the city is now attempting, in its defense to the present mandamus proceeding, to attack collaterally the title of Neubauer to the position of Director of Public Safety while he was the incumbent thereof. The only proper method by which the question of his status could have been raised was by a proceeding in quo warranto instituted while he was in the possession of the office and exercising its functions: *Com. v. McCombs*, 56 Pa. 436; *Goldsworthy v. Boyle*, 175 Pa. 246; *Com. ex rel. Shoemaker v. Thomas*, 328 Pa. 19, 24; *Solar Elec. Co. v. Public Service Commission*, 88 Pa. Superior Ct. 495, 498.

We had before us, in *Com. ex rel. v. Snyder*, supra, a situation similar to the one here presented. There an action of quo warranto was brought against a county treasurer, in which it was charged, inter alia, that one of the township commissioners, whose vote was neces-

sary to his appointment, was a *de facto* officer. In dismissing this objection to the treasurer's title to office, we reaffirmed the general rule respecting the validity of the acts of *de facto* officers, and speaking by Mr. Justice SIMPSON said (p. 559) : "Here, the commissioner, whose vote was objected to, was, admittedly, an officer *de facto,* holding under color of title, and, up to the time he voted for respondent, no direct attack had been made on his right to serve as commissioner. 'Confusion worse confounded' would necessarily result from any other rule than as above stated."

Therefore it seems to us that it is immaterial in the present case whether the petitioner was appointed by a *de jure* or a *de facto* officer. The city admits that the regular civil service procedure was followed in his appointment, and that he was fully qualified and eligible under the law to occupy the position. The record contains no allegation that the director gained any personal advantage from the appointment. Because of his excellent standing on the civil service list, petitioner would have been entitled to be selected for the position by any incumbent, and there is no suggestion that he failed to perform his duties in a satisfactory and competent manner. No consideration of public policy requires that he be deprived of his position because of a possible defect in the title of the officer who appointed him.

At the time of his dismissal the status of petitioner had not ripened to that of permanent employment, because the probationary period of three months had not elapsed, but under Section 8 of the Civil Service Law of May 23, 1907, P. L. 206, he could not be dismissed except for "just cause," and then only after a hearing in the manner provided in Section 20 of that law. Since no proper ground for his dismissal was alleged and the statutory procedure was not followed, he is entitled to reinstatement and the payment of back salary for the

time during which he was wrongfully deprived of his position.

In view of our conclusion that petitioner was validly appointed, we need not consider whether his employment was ratified by the conduct of Director Fairley in approving payrolls upon which his name appeared.

The order of the court below is affirmed.