421 A.2d 641

Raymond T. SPYKERMAN and Lawrence Healy, Individually and in their official capacities as Members of the Board of Supervisors of the Township of Chester and John J. Matthews, Individually, and in his official capacity as Chairman of the Vacancy Board of the Township of Chester, Appellants,

v.

The Honorable Melvin G. LEVY, in his official capacity as Judge of the Court of Common Pleas of the 32nd Judicial District, and all other Judges of said district or appointed to serve in such district acting as his substitute or successor, Appellees.

Connie HALES and Joseph Palazzo, Individually and in their official capacities as Members of the Board of Supervisors of the Township of Chester, Appellees,

v.

The TOWNSHIP OF CHESTER, Raymond T. Spykerman and William Pisarek, Individually and in their official capacities as Members of the Board of Supervisors of the Township of Chester and Frank Slavin, Individually and in his official capacity as Engineer for the Township of Chester and Thomas Stapleton, Individually and in his official capacity as Solicitor for the Township of Chester and William Phillips, Individually and in his official capacity as a Member of the Board of Supervisors of the Township of Chester, Appellants.

Supreme Court of Pennsylvania.

Sept. 22, 1980.

Thomas J. Stapleton, Jr., Richard L. Colden, Drexel Hill, for petitioners and appellants.

Christopher F. Gorbey, Chester, for respondents and appellees.

## OPINION OF THE COURT

NIX, Justice.

We are presented with a consolidated appeal. In *Spykerman, Healy, and Matthews v. Levy*, petitioners seek a writ

of prohibition against the Common Pleas Court of Delaware County in order to prevent that court from appointing someone to fill the vacancy on the Board of Supervisors of Chester Township.[1] In *Hales and Palazzo v. Township of Chester, Spykerman, Pisarek, Walton, Stapleton and Phillips*, the appellants appeal to this Court from a temporary restraining order of the Common Pleas Court of Delaware County enjoining them from acting in their capacity as public officials.[2]

In January 1979, Connie Hales, Joseph Palazzo, Raymond T. Spykerman, Stephen Heller, and Lawrence Healy were duly elected supervisors of Chester Township. Chester Township is a Second Class Township in Delaware County with a total population of 7,000. The township is comprised of three communities, Toby Farms, Lower Feltonville, and Upper Feltonville.

On January 4, 1979, the Chester Township Board of Supervisors held a reorganizational meeting[3] and failed to elect

1. This Court has jurisdiction over the Petition for a Writ of Prohibition pursuant to 42 Pa.C.S.A. § 721(2). This original action has been docketed in this Court at No. 173 Misc. Docket 1979.

2. This Court has jurisdiction over this appeal pursuant to 42 Pa.C.S.A. § 722(2). This appeal has been docketed in the County at No. 236 Misc. Docket 1980.

3. The township organizational meeting is provided for by 53 Pa.C.S.A. § 65511:

   The supervisors of each township shall meet at convenient time and place on the first Monday in January of each year. If the first Monday is a legal holiday, the meeting shall be held the first day following. At such time the township supervisors shall organize as a board by electing one of their number as chairman and another member as vice–chairman. The board shall appoint a treasurer and a secretary, who shall be the same person, and who may or may not be a member of the board, except where the board selects a trust company or a banking institution to act as treasurer, in which case it shall elect an individual as secretary.

   The meeting under this section may be considered as a regular monthly meeting for the transaction of such business as comes before it. The first order of business at this meeting shall be organization of the board. Any action taken or business transacted other than organization of the supervisors as a board at any organization meeting held prior to the effective date of this amending act, which is invalid for the reason that the action was taken or

the Vacancy Board Chairman pursuant to 53 Pa.C.S.A. § 65420.[4] Latter that year, on September 13, 1979 at a regularly scheduled supervisors meeting, Spykerman, Healy and Heller voted to send Hales to Atlanta, Georgia on township business during the last week in September. Subsequently, Heller sent a letter to the supervisors advising them that he intended to resign on October 4, 1979. Before leaving on September 26, 1979, Hales asked for a copy of the agenda for the September 27, 1979, supervisors meeting that she would not be able to attend because of the trip to Atlanta. She was informed that there was no meeting agenda.

At the September 27, 1979 meeting, Heller submitted his resignation effective September 28, 1979. Then, Heller, Spykerman, and Healy elected John Matthews as the Chairman of the Vacancy Board. Palazzo objected that the election was illegal since it took place during an annex

business transacted at an organization meeting, is hereby validated and confirmed. As amended 1957, May 20, P.L. 174, § 1; 1963, March 28, P.L. 9, No. 6, § 1; 1963, June 6, P.L. 71, § 1.

4. The procedure for electing a Vacancy Board Chairman is provided for in 53 Pa.C.S.A. § 65420:

If the electors of any township shall fail to choose a supervisor, tax collector, auditor or assessor, or if any person elected to such office shall neglect or refuse to serve therein, or if a vacancy shall occur in the office by death, resignation, removal from the township, or otherwise, a majority of the remaining supervisors may appoint a successor who is a registered voter and upon their failure to make such appointment within thirty days after the vacancy occurs, the vacancy shall be filled within fifteen additional days by a vacancy board consisting of the board of supervisors and one registered elector of the township, who shall be elected by the board of supervisors at each reorganizational meeting and who shall act as chairman of the vacancy board. If the vacancy board fails to fill the position within the time prescribed, the chairman shall petition the court of common pleas to fill the vacancy. In all cases, the successor so appointed shall hold the office until the first Monday in January after the first municipal election occurring more than sixty days after the vacancy occurs, at which election an eligible person shall be elected for the unexpired term.

homes meeting[5] and that there was no notice of the election to himself or Hales.

On October 23, 1979 Hales and Palazzo filed a quo warranto in the Common Pleas Court of Delaware County against Spykerman, Healy and Matthews challenging the legality of Matthews' election as Vacancy Board Chairman. Hales and Palazzo also filed a motion for a preliminary injunction and temporary restraining order. Judge Joseph T. Labrum issued a Temporary Restraining Order restraining the Vacancy Board from acting to fill the existing vacancies until a hearing could be held on October 26, 1979.

On October 26, 1979, a full hearing was held before Judge John V. Diggins of the Delaware County Court of Common Pleas on the motion for the preliminary injunction. The court denied the requested motion. On the same day, Hales and Palazzo filed a Complaint in Equity, identical to the quo warranto complaint, along with another motion for a preliminary injunction. In the equity action Judge Diggins granted a preliminary injunction which restrained Spykerman, Healy and Matthews from acting to fill the vacancy on the Board of Supervisors until the quo warranto action was adjudicated.[6]

Subsequently, serious problems began to develop in Chester Township such as drafting the 1980 budget, contract negotiations for the fire and policemen, and the circulation of petitions by Toby Farms to secede from Chester Township. Thus on December 7, 1979, Supervisor Palazzo and five Chester Township residents petitioned the Common Pleas Court of Delaware County to fill the vacancy on the

5. At the January 4, 1979 reorganizational meeting, the Board of Supervisors agreed that general township business would be scheduled on the second Thursday of each month and that special business relating to Annex Homes was scheduled for the fourth Tuesday of each month. However, the published notice of the scheduled meeting was defective since it stated that the annex homes meetings would be on the fourth Thursday of each month.

6. Notably, the record of the October 26, 1979 hearing has not yet been transcribed, nor have Spykerman, Healy or Matthews appealed from the Order of October 26, 1979.

Board of Supervisors. Judge Melvin Levy scheduled a hearing on December 17, 1979 to consider appointing Robert C. Wilson, Jr. to the vacancy on the Board of Supervisors.

On December 13, 1979, Healy, Spykerman and Matthews filed a complaint in prohibition in the Pennsylvania Supreme Court asking this Court to prohibit the common pleas court from conducting a hearing to fill the vacancy of the Board of Supervisors of Chester Township. On that same date, this writer signed a rule to show cause why a supersedeas should not be granted staying any hearing on the appointment until the entire Court ruled on the Complaint in Prohibition. Following an in chambers hearing, on January 3, 1980, I issued the supersedeas pending resolution of the complaint in prohibition before the full Supreme Court.

On January 7, 1980, there was a Chester Township Reorganizational Meeting. Matthews' alleged term as Vacancy Board Chairman expired. Healy's term as Township Supervisor also expired. William Pisarek was elected to the Board of Supervisors to replace Healy. At the meeting, a motion was carried to declare all township offices vacant. The supervisors filled the positions of chairman, secretary, treasurer, and police commissioner by a majority vote. But the office of Vacancy Board Chairman ended in a two to two tie and remained vacant.

Meanwhile, the proposed 1980 budget was adopted at a special supervisors meeting on January 11, 1980. However, before the proposed budget may be finally adopted, the Second Class Township Code required that the proposed budget be posted and advertised for twenty days. Thus, the Board of Supervisors unanimously agreed that a special meeting should be scheduled for January 31, 1980 in order to finally adopt the 1980 budget.

Prior to the January 31, 1980 budget meeting, Palazzo requested a copy of the agenda for the meeting from Pisarek and Spykerman, and also asked whether any other business would be transacted at the meeting. Pisarek and Spykerman stated that there was no agenda and that they knew of no other business to be transacted at the budget

meeting. Palazzo then informed them that he might not be able to attend the budget meeting due to a prior commitment.

On January 31, 1980, Hales arrived at the Township Building prior to the budget meeting, requested a copy of the agenda for the meeting, and asked Spykerman and Pisarek whether any business other than the budget would be transacted at the meeting. Spykerman and Pisarek advised Hales that there was no agenda and that they knew of no other business to be transacted aside from the budget. Palazzo was unable to attend the meeting. After the final budget was unanimously adopted, Spykerman nominated Slavin for the position of Vacancy Board Chairman, Stapleton for Township Solicitor, and Walton as Township Engineer. Hales objected to the nominations and left the room. Meanwhile, Spykerman and Pisarek remained at the meeting and voted in favor of Slavin, Stapleton, and Walton.[7]

Shortly thereafter, Spykerman, Pisarek, and Slavin scheduled a Vacancy Board meeting for February 4, 1980 at 8:00 a. m. The parties published notice of the scheduled meeting in the *Philadelphia Daily News* [8] on Saturday, February 2, 1980. The advertisement was also posted on the Township Bulletin Board, inside the Township Building but since the Township Building is closed on weekends, it was impossible for township residents to see the notice. On February 4, 1980, Slavin, Spykerman and Pisarek met and elected Phillips to the vacancy on the Board of Supervisors which was created by Heller's resignation. Neither Hales nor Palazzo were advised of, or were present at, the February 4, 1980 meeting.

7. Pursuant to 53 Pa.C.S.A. § 65512, three members of a five member Board of Supervisors constitute a quorum. In order to transact any business, an affirmative vote of the majority of the Board is necessary. Since only two members of the five member board were present, there was not a quorum or sufficient affirmative votes to sustain the action.

8. *The Philadelphia Daily News* is not a newspaper of general circulation in Chester Township and it had never before been used by the Township for notice purposes.

On February 8, 1980, Hales and Palazzo filed another quo warranto and equity action in the Common Pleas Court of Delaware County. In conjunction with the equity action, they filed a motion for a preliminary injunction and a Temporary Restraining Order. The complaint in both actions concern Hales' and Palazzo's assertion that Slavin, Walton, Stapleton, and Phillips were not properly elected to their respective positions. Judge Reed issued a Temporary Restraining Order and scheduled a hearing on February 12, 1980. The scheduled hearing was continued until February 25 and 26, 1980 and was held before Judge Diggins. At the conclusion of the hearing, Judge Diggins held the matter under advisement and continued the Temporary Restraining Order.

On March 25, 1980, the defendants in the February 8, 1980 equity action filed with this Court a Notice to Appeal From the Order Continuing the Temporary Restraining Order. The appellants' request for a supersedeas pending appeal was denied by Judge Diggins and they filed an application for a stay with the Pennsylvania Supreme Court. After a hearing on the application for a stay before Justice Kauffman and this writer, on March 31, 1980 we signed an order granting a stay of Judge Diggins' Temporary Restraining Order pending resolution of the appeal by the full Court.

## I. The Writ of Prohibition

In the October 1979 equity action, the Common Pleas Court enjoined the Vacancy Board from acting to fill the vacancy on the Board of Supervisors pending the outcome of the quo warranto proceeding. While the quo warranto action was pending, a petition was filed requesting the Common Pleas Court to appoint someone to fill the very vacancy on the Board of Supervisors which the court had restrained the Vacancy Board from filing. The petitioners allege that the court, by restraining the Vacancy Board from acting, is attempting to create a basis for jurisdiction to act pursuant to § 65420 without first establishing that the Vacancy Board had been improperly constituted and therefore without power to act. Petitioners in this action also

argue that the court was without jurisdiction because a petition under § 65420 can only be filed by the Chairman of the Vacancy Board which was not the case here.[9]

■ The writ of prohibition is a common law writ of extremely ancient origin. *In re McNair*, 324 Pa. 48, 187 A. 489 (1936); *In re First Congressional Dist. Elect.*, 295 Pa. 1, 144 A. 735 (1928); *In re Dewalt*, 42 W.N.C. 114, 40 A. 470, 471 (1898). The principal purpose of the writ of prohibition is to:

> . . . prevent an inferior judicial tribunal from assuming a jurisdiction with which it is not legally vested in cases where damage and injustice would otherwise be likely to follow from such action. It does not seek relief from any alleged wrong threatened by an adverse party; indeed it is not a proceeding between private litigants at all but solely between two courts, a superior and an inferior, being the means by which the former exercises superintendence over the latter and keeps it within the limits of its rightful power and jurisdiction.
>
> *Carpentertown Coal & Coke Co. v. Laird*, 360 Pa. 94, 98, 61 A.2d 426, 428 (1948).

The rationale for granting the writ "is to shut off the necessity of going through a hearing, trial, before a tribunal that has no power to deal with the subject matter at all." *Akron Borough v. Pa. P.U.C.*, 453 Pa. 554, 561, 310 A.2d 271, 275 (1973) *quoting* Gellhorn & Byse, Administrative Law 138 (1970). However,

> [the] writ of prohibition is one which, like all other prerogative writs, is to be used only with great caution and forbearance and as an extraordinary remedy in cases of extreme necessity, to secure order and regularity in judicial proceedings if none of the ordinary remedies provided

---

**9.** The Common Pleas Court is attempting to fill the vacancy on the Board of Supervisors according to the jurisdictional authority of 53 Pa.C.S.A. § 65420. Pursuant to 53 Pa.C.S.A. § 65420, if the Township supervisors and the Vacancy Board fail to appoint someone to fill a vacancy on the Board of Supervisors, then the Chairman of the Vacancy Board shall petition the Common Pleas Court to fill the vacancy.

by law is applicable or adequate to afford relief. It is a writ which is not of absolute right but rests largely in the sound discretion of the court.

*Carpentertown*, 360 Pa. at 102, 61 A.2d at 420.

■ The scope and availability of the writ was explained in *Commonwealth v. Mellon Nat. Bk. & Tr. Co.*, 360 Pa. 103, 107, 61 A.2d 430, 433 (1948), *quoting* Ferris, Extraordinary Legal Remedies 439:

[I]t is well settled that a writ of prohibition may not be used to usurp or perform the functions of an appeal, writ of error or certiorari, or to correct any mistakes, errors or irregularities in deciding any question of law or fact within its jurisdiction. The office of the writ, as at common law, is to prevent an unlawful assumption of jurisdiction, not to correct mere errors and irregularities in matters over which the court has cognizance. Where the general scope and purpose of the action is within the jurisdiction of the court, any error or overstepping of its authority in a portion of its judgment, or any other error in its proceedings, is only ground for a review or appeal, and not prohibition.

Thus, the writ "will never be granted where there is a complete and effective remedy by appeal, certiorari, writ of error, injunction or otherwise . . .". *Carpentertown*, 360 Pa. at 102, 61 A.2d at 430. *See also, In re Reyes*, 476 Pa. 59, 381 A.2d 865 (1977); *Specter v. Shiomos*, 457 Pa. 104, 320 A.2d 134 (1974); Comment, *The Writ of Prohibition in Pennsylvania*, 80 Dick.L.Rev. 472 (1976).

Upon an analysis of the facts presented in the instant case, we do not find at this point in time that a writ of prohibition is warranted. Guidance is provided by the watershed opinion of *Carpentertown Coal and Coke Co. v. Laird*, 360 Pa. 94, 61 A.2d 426 (1948). In *Carpentertown Coal*, a lessee of the coal underlying the Pennsylvania Turnpike sought a determination from the State Mining Commission concerning what portion of coal must be left in place to support the turnpike and to assess the resulting damages to the coal company. The State Mining Commission found that

the Turnpike Commission had waived its right to vertical and lateral support, and therefore was not entitled to damages. Two years later, the Turnpike Commission petitioned the State Mining Commission to order the coal company to pay subsidence damages and to cease operations. On the basis of this petition, the Chairman of the State Mining Commission issued a Rule to Show Cause why the prayer for relief should not be granted. Thereafter, the coal company filed a petition for a writ of prohibition alleging that the State Mining Commission was threatening to exercise jurisdiction which it did not possess. We held that a writ of prohibition was inappropriate under the circumstances of the case. We reasoned that:

> In the present case the action of the Chairman of the State Mining Commission in granting a preliminary rule to show cause does not necessarily indicate that the State Mining Commission itself may not, on argument directed to it, ultimately conclude that it is without jurisdiction over the prayer of the petition of the Turnpike Commission; it cannot be assumed that it will finally act if its lack of jurisdiction be established.

*Id.,* 360 Pa. at 102, 61 A.2d at 430.

Similarly in the case at bar, the Delaware County Court of Common Pleas merely scheduled a hearing on the petition to appoint someone to the vacancy on the Board of Supervisors. To intervene at this stage in the proceeding would preclude the lower court from considering in the first instance an objection to its own jurisdiction. It is foreseeable that at the hearing on the petition to fill the vacancy that the Common Pleas Court will sustain an objection to its own jurisdiction. Thus far, the Common Pleas Court has not transgressed its scope of authority, nor is there a basis for this Court to assume that the lower court would make such an egregious error. *See also: Troiani Bros. v. Pa. P.U.C.,* 488 Pa. 386, 412 A.2d 562 (1980) (to allow intervention at this stage would preclude the inferior tribunal from considering in the first instance an objection to its jurisdiction); *Akron Borough v. Pa. P.U.C.,* 453 Pa. 554, 310 A.2d

271 (1973) (the court did not find that the trouble and expense caused by participating in a commission proceeding and leading to a final appealable order makes the remedy of appeal less than adequate).

■ We note, however, that it would appear that the court's right to proceed to appoint under § 65420 will depend upon the outcome of the quo warranto action instituted by Hales and Palazzo challenging the Matthews' election as Vacancy Board Chairman. Thus, orderly procedure would suggest the disposition of that action before proceeding to consider the petition to fill the vacancy.[10] We will not assume that the court below would not be aware of those factors its jurisdiction depends upon and proceed accordingly.

Accordingly, the request for a writ of prohibition in the action docketed at No. 173 Miscellaneous Docket 1980 is denied. The supersedeas previously granted in this cause is vacated.

## II. Appeal from the Preliminary Injunction

In *Hales and Palazzo v. Township of Chester, Spykerman, Pisarek, Slavin, Walton, Stapleton and Phillips*, the appellants appeal to this Court from a temporary restraining order of the Court of Common Pleas of Delaware County issued on February 26, 1980.

On February 8, 1980, Hales and Palazzo filed both a quo warranto and an equity action in the Court of Common Pleas of Delaware County against the Township of Chester, Spykerman, Pisarek, Slavin, Walton, Stapleton and Phillips. In conjunction with the equity action, they filed a motion for a preliminary injunction and a Temporary Restraining Order. The complaints, identical in both actions, concern Hales' and Palazzo's assertion that Slavin, Walton, Stapleton and Phillips were not properly elected to their respective positions. Appellees requested that Slavin, Walton, Stapleton and Phillips be removed from their respective offices

10. We are also mindful that there may be a question of mootness to be considered in view of the subsequent elections.

and restrained from acting in their official capacities until such time as the Court removes them from their office in an action in quo warranto.

The Order of February 26, 1980 restrained appellants Slavin, Walton and Stapleton from acting in their official capacities.[11] The Order, in addition, restrained Spykerman and Pisarek from acting in any official capacity with appellants and also enjoined them in their capacity as Vacancy Board members. The Order does not enjoin Spykerman and Pisarek from otherwise performing their duties as supervisors.

Appellants argue that the Common Pleas Court improperly restrained public officials from acting in their official capacity. They contend that the remedy of quo warranto, and not an injunction, is the appropriate procedure to try title to public office. Further, they point out that quo warranto does not permit an interim relief which would result in prohibiting the official from acting pending the final outcome. Although this Court in no respect condones the alleged activities of the appellants, we agree that the complaint in equity was improperly entertained and that the issuance of the preliminary injunction was improper.

Historically, Pennsylvania courts have held that the quo warranto action is the sole and exclusive method to try title or right to public office.[12] Comment, *Quo Warranto in Pa.*, 80 Dick.L.Rev. 218, 221 (1976). Title cannot be tested by mandamus, *Commonwealth v. James*, 214 Pa. 319, 63 A. 743 (1906); injunction, *Eddy v. Ashley Borough*, 281 Pa. 4,

11. Phillips had not been served with process or the Temporary Restraining Order at the time of the hearing. He was not present nor did he participate in the hearing. The Order of February 26, 1980 expressly exempted Phillips from its terms and he is not a party to this appeal.

12. The statutory provisions for the action of quo warranto as set forth in the Act of June 14, 1836, P.L. 621; § 1 *et seq.*, 12 P.S. § 2021–43 were suspended in part by Pa.R.C.P. 1458(1)–(3), Pa.R.C.P. 1111–1113, repealed in part by the Act of June 3, 1971, P.L. 119, No. 6, § 1 *et seq.*; repealed further by the Act of April 28, 1978, P.L. 202, No. 53, § 2(a) *et seq.*; and are presently a part of the common law of the Commonwealth of Pennsylvania under 42 P.S. § 2003(a) & (b).

125 A. 308 (1924), or any other proceeding that is provided for by the common law, *Brinton v. Kerr*, 320 Pa. 62, 63–64, 181 A. 569, 570 (1935). A quo warranto is addressed to preventing a continued exercise of authority unlawfully asserted, rather than to correct what has already been done under the authority. *State Dental Council & Exm. Bd. v. Pollock*, 457 Pa. 264, 318 A.2d 910 (1974); *Johnson v. Manhattan R.R. Co.*, 289 U.S. 479, 53 S.Ct. 721, 77 L.Ed. 1331 (1933). The gravamen of the complaint is the right to hold and exercise the powers of the office in contradistinction to an attack upon the propriety of the acts performed while in office. In *Carrol Twp. Sch. Bd. Vacancy*, 407 Pa. 156, 157–58, 180 A.2d 16, 17 (1962), this Court explained the rationale for the exclusive nature of the quo warranto remedy:

> Quo warranto is the Gibraltar of stability in government tenure. Once a person is duly elected or duly appointed to public office, the continuity of his services may not be interrupted and the uniform working of the governmental machinery disorganized or disturbed by any proceeding less than a formal challenge to the office by that action which is now venerable with age, reinforced by countless precedent, and proved to be protective of all parties involved in a given controversy, namely, quo warranto.

A quo warranto action must be brought to oust de jure, as well as de facto officers from their public positions. A de facto officer is "a person in possession of an office and discharging its duties under the color of authority,–that is, authority derived from an election or appointment however irregular or informal, so that the incumbent be not a mere volunteer." *Pleasant Hills Boro. v. Jefferson Twp.*, 359 Pa. 509, 512–13, 59 A.2d 697, 699 (1948). Generally, quo warranto can be instituted only by the Attorney General or by the District Attorney. *Mayer v. Hemphill*, 411 Pa. 1, 6, 190 A.2d 444, 446 (1963). A private person may not bring a quo warranto action to redress a public wrong when he has no individual grievance. *McLaughlin v. Cluley*, 56 Pa. 270 (1867). If a private person has a special right or interest, as

486

distinguished from the right or interest of the public generally, or he has been specially damaged, he may have standing to bring a quo warranto action. *Brinton v. Kerr, supra; Schermer v. Franek*, 311 Pa. 341, 166 A. 878 (1933).

In the complaints accompanying both the quo warranto and the equity actions, appellees challenged the appellants' right to hold office and to exercise the powers of their office. Appellees alleged that appellants Spykerman and Pisarek acted contrary to township laws in the election of Slavin, Walton, Stapleton and Phillips. In fact, the Common Pleas Court did determine that appellants Spykerman and Pisarek acted in bad faith, in violation of their public duty, and contrary to the spirit of the law in the election of Slavin, Stapleton, Walton and Phillips. Based upon this finding, the Court enjoined Slavin, Walton and Stapleton from acting in their official capacities and enjoined Pisarek and Spykerman from acting in any official capacity with Slavin, Walton and Stapleton. The Court also restrained Pisarek and Spykerman from acting in their capacity as Vacancy Board members.

Regardless of the fact that these public officials may have obtained their public office by irregular means, these officials are not mere volunteers, and are thus clothed with color of title. *Pleasant Hills v. Jefferson Twp., supra.* We have consistently recognized that the continuity of these de facto officers' services may not be interrupted in any proceeding other than a quo warranto. We have stated that:

Recognizing that an unlimited right to question collaterally the title to office would impede the orderly operation of government, we have ruled that the official acts of one who acts under the color of title to an office should be given the same effect as those of a *de jure* official. "From an early date the appellate courts of this Commonwealth have held steadily to the rule that ' "the acts of public officers *de facto,* coming in by color of title, [whether or not entitled *de jure*], are good so far as respects the public, but void when for their own benefit"; and it is equally well settled that attacks upon the right of such

incumbents to serve, must be made by the Commonwealth, in a direct proceeding for that purpose and cannot be made collaterally': *Com. ex rel. v. Snyder*, 294 Pa. 555, 559." *Commonwealth ex rel. Palermo v. Pittsburgh*, 339 Pa. 173, 177, 13 A.2d 24, 26 (1940).

*St. Dental Exam. Bd. v. Pollock*, 457 Pa. 264, 267–68, 318 A.2d 910, 913 (1974).

■ Moreover, in a case analogous to the instant appeal, we recognized that although public officials may have acted in bad faith, a quo warranto, and not an equitable remedy, is the appropriate means to try title to public office. In *DeFranco v. Belardino*, 448 Pa. 234, 292 A.2d 299 (1972), taxpayers of Bensalem Township instituted an equity action against the Township Supervisors in order to challenge the appointment of Supervisor Belardino by the other Township Supervisors. The source of the dispute concerned the activities at a Township meeting on May 13, 1970. At this meeting, the supervisors appointed James E. Stauring to fill the vacancy on the Board created by the death of Fred Zeigler, whose term would have expired in January 1974. The next morning, Belardino, whose term would have expired in January 1972, resigned from the Board and Albert Bader was appointed to the vacancy. At this same meeting, Stauring also resigned and Belardino was appointed to his vacancy. The end result of this maneuvering was an addition of two years to Belardino's term of office.

■ After an evidentiary hearing, the Common Pleas Court sitting in equity entered a decree nisi in favor of the taxpayers. Subsequent exceptions were denied and the defendants appealed to this Court. On appeal, we stated that we did not approve of or condone the supervisors' obvious subterfuge, but unlike the Common Pleas Court, we failed to find that the facts of the case merited an equitable remedy.

There have, however, been instances where alternative actions have been allowed to raise what would be traditionally classified as a quo warranto claim where the exigencies of the circumstances dictated. These were instances where the standing requirement of quo warranto would have pre-

cluded an issue of grave public concern from judicial scrutiny. *See e. g., League of Women Voters v. L. Merion Bd. of Comm.*, 451 Pa. 26, 301 A.2d 797 (1973) (an equitable remedy was necessary where both the attorney general and the district attorney refused to institute a quo warranto proceeding); *Specter v. Martin*, 426 Pa. 102, 232 A.2d 729 (1967) (since the attorney general approved the district attorney's candidacy for mayor and it was inconceivable that district attorney would institute suit against himself in quo warranto, mandamus action was appropriate); and *Chalfin v. Specter*, 426 Pa. 464, 233 A.2d 562 (1967) (an equitable remedy should lie because unless the court now takes a position forthwith on Specter's status, if Specter is elected Mayor and thereafter declared ineligible, the majority of Philadelphia voters will be disenfranchised, thousands of campaign hours and money would be wasted, and the orderly administration of the city government will be paralyzed). Here the quo warranto issue is before the Court and the gravamen of the complaint is raised therein. Since the questions involved are before the Court under the traditionally accepted action, there is no reason to provide an alternative avenue for these considerations.

Thus, it appears that the lower court abused its discretion in entertaining the separate equity action and in enjoining the public officials from acting in their official capacity pending the quo warranto determination. The injunction created its own exigent circumstances by crippling the daily operations of the government of Chester Township. The requirement that title to public office must be tried exclusively in a quo warranto proceeding originated in order to prevent exactly the type of harm created by this injunction.

The order of February 26, 1980 of the Common Pleas Court of Delaware County is reversed, the injunction is dissolved and the equity action is dismissed. The court is ordered to proceed forthwith to dispose of the merits of the quo warranto complaint filed February 8, 1980.

FLAHERTY, J., filed a concurring opinion.

LARSEN, J., filed a concurring and dissenting opinion in which O'BRIEN, J., joined.

LARSEN, concurring and dissenting.

I concur in the majority's result in No. 173 Misc. Docket 1979, which dismissed the appellants' complaint in prohibition.

However, I dissent from the majority's result and opinion in No. 236 Misc. Docket 1980, which provides that the appellants cannot be enjoined from acting in their official capacity. The appellants are elected officials of Chester Township whose right to hold office was questioned in a quo warranto proceeding filed on February 8, 1980. This action alleged that improper notice of the meeting of Township Supervisors at which they were elected, as well as a lack of a quorum, invalidated their election. On February 12, 1980, the Court of Common Pleas of Delaware County granted an Injunction which restrained the appellants from acting in their "official" capacity pending the resolution of the quo warranto proceeding. On February 26, 1980, the Common Pleas Court ordered that the Injunction remain in effect. The appellants filed a notice of appeal to this Court and also requested an order staying the Injunction pending appeal. A Stay was granted by Mr. Justice Nix and Mr. Justice Kauffman on April 7, 1980.

I would dismiss this appeal and dissolve the aforementioned Stay.

The issue in this case is whether the Common Pleas Court can grant equitable relief which restrains the appellants (who are public officials) from acting in their "official" capacity, while a quo warranto action is pending which will or may remove them from office.

While not condoning the alleged illegal activities of the appellants, the majority applies the "exclusive remedy

rule"[1] which prohibits injunctive relief when the remedy of quo warranto is available. The traditional rationale for this rule was to foster the "Gibraltar of stability in government tenure." *In re Board of School Directors of Carroll Township*, 407 Pa. 156, 180 A.2d 16 (1962). It can be argued that efficient governmental functioning would be impaired by enjoining the action of the officials, even though these officials are under attack in a quo warranto action. This rationale fails when applied to this case. The Common Pleas Court found that prior to the alleged usurpation by the appellants the business of the Township was conducted by compromise, (Supplemental Reproduced Record at 67a) and there was no serious impairment. Further, whatever danger may be present that Township business would be impaired if the injunction were affirmed would be outweighed by public outrage at seeing officials who allegedly seized power illegally conducting the Township business, and in derogation of the rights of the residents of the Feltonville section of Chester Township.[2]

Furthermore, I would grant injunctive relief because the majority's result is not in accord with recent decisions of this Court. These decisions have developed what can be termed the "exceptional circumstances doctrine,"[3] which permits injunctive relief in exceptional circumstances, even where the remedy of quo warranto is available.

The deviation from the exclusive remedy rule was first stated in *Mayer v. Hemphill*, 411 Pa. 1, 190 A.2d 444 (1963), wherein this Court held that the exclusive remedy rule did

1. The majority cites *Borough of Pleasant Hills v. Jefferson Township*, 359 Pa. 509, 59 A.2d 697 (1948) and *In re Board of School Directors of Carroll Township*, 407 Pa. 156, 180 A.2d 16 (1962) in support of this rule.

2. The conflict on the Board of Supervisors of Chester Township apparently stems from an underlying conflict between the communities of Toby Farms and Feltonville. The trial court found that the actions of the appellants are directed at precluding the Feltonville residents from representation on the Chester Township Board of Supervisors. (Supplemental Reproduced Record at 65a).

3. Comment, *Quo Warranto in Pennsylvania: Old Standards and New Developments*, 80 Dick.L.R. 218, 232 (1976).

not apply in cases where exceptional circumstances existed.[4] The statement of the doctrine in *Mayer* was dictum, as the court assumed *arguendo*, that an equitable remedy was available concurrently with quo warranto but denied the relief on other grounds. However, this new doctrine was followed by this court in later decisions. *Specter v. Martin*, 426 Pa. 102, 232 A.2d 729 (1967) (Equitable relief was granted where the district attorney, the appropriate party to bring quo warranto, could not be expected to bring the action against himself); *Chaflin v. Specter*, 426 Pa. 464, 233 A.2d 562 (1967) (If equitable relief was not granted immediately a later quo warranto action might necessitate removal of a mayor, with the attendant political chaos); *League of Women Voters v. Board of Commissioners*, 451 Pa. 26, 301 A.2d 797 (1973) (The court enjoined a public official from acting in his official capacity even though the remedy of quo warranto was available because the attorney general and the district attorney refused to commence a quo warranto action—the exceptional circumstances); *Cf: DeFranco v. Belardino*, 448 Pa. 234, 292 A.2d 299 (1972) (The court did not find that the exceptional circumstances doctrine was applicable and denied equitable relief. While the circumstances were similar to the instant case, the shenanigans of the Township Supervisors in *DeFranco* did not rise to the level of blatant illegality as they do in the instant case).[5]

**4.** The court in *Mayer* stated,

". . . in recent years *exceptions* have been wisely recognized by the Courts to the narrow circumscribed limited remedy of Quo Warranto for several reasons: (1) quo warranto does not always furnish an adequate and full remedy; (2) the wisdom of applying a remedy which will avoid a multiplicity of suits; (3) the paramount right of the public to have a surer and more adequate remedy to restrain wrongful acts by a public official, . . ." *Id.*, 411 Pa. at 7, 190 A.2d at 447.

**5.** Mr. Justice Pomeroy in his dissent in *DeFranco v. Belardino*, 448 Pa. 234, 292 A.2d 299 (1972) decries the fact that denying injunctive relief had allowed the defendant to perpetrate a "slick and transparent scheme" in circumstances similar to this case. *Id.*, 448 Pa. at 238, 292 A.2d at 301. In the same case, Mr. Justice Manderino in his dissent rejected the exclusive remedy rule saying that "No more time should be wasted in the judicial system by citizens, lawyers and judges trying to determine how many quos can successfully dance on

The exceptional circumstances which make injunctive relief necessary in this case are the alleged blatant illegality of the actions of the appellants, the finding of the Common Pleas Court that the actions of the appellants threaten to continue (Supplemental Reproduced Record at 64a), and that these actions are directed at precluding the Feltonville residents from representation on the Chester Township Board of Supervisors. (Supplemental Reproduced Record at 65a). The spectre of arrogant disregard of legality by public officials which may lead to conflict between communities confronts us here and surely constitutes exceptional circumstances which are grounds for injunctive relief.

The trauma which accompanied the Watergate tragedy has indicated the need for effective and efficient means for dealing with illegal official conduct. It is highly unlikely that the citizens of this nation would place a greater premium on continued governmental function than on immediately restraining the wrongdoing officials. The social conditions which attended the historical exclusive remedy rule are changed now, and case law which supports this rule has lost its value as precedent. The "Gibraltar of stability in governmental tenure", the exclusive remedy rule, can no longer be the sole criteria for good government.

Consequently, I would affirm the order of the Common Pleas Court.

O'BRIEN, J., joins in this concurring and dissenting opinion.

FLAHERTY, Justice, concurring.

I adopt the rationale expressed by Mr. Justice Larsen, but concur in the result reached by the majority opinion in this case.

the needle point of the warrantos." *Id.*, 448 Pa. at 23, 292 A.2d at 301.