**[J-17-2015] [OAJC: Saylor, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


| | |
|---|---|
| IN RE:  THE THIRTY-FIFTH STATEWIDE INVESTIGATING GRAND JURY | :  No. 197 MM 2014<br>:<br>:<br>:<br>: |
| PETITION OF:  ATTORNEY GENERAL, KATHLEEN G. KANE | :  ARGUED:  March 11, 2015<br>:<br>:<br>:<br>:<br>: |


**DISSENTING OPINION**


**MADAME JUSTICE TODD**                    **DECIDED:  March 31, 2015**

Under our time-honored tripartite system of government, the judiciary does not prosecute.  Eschewing this historic system of checks and balances, and the traditional approach to the investigation of alleged breaches of confidentiality in grand jury proceedings, the Opinion Announcing the Judgment of the Court ("OAJC") instead seemingly embraces a novel extension of the courts' appointment powers.  In so doing, it has unnecessarily blurred the traditional lines of demarcation of power between the executive and judicial branches of our government and has given largely unfettered power to a judicial special prosecutor.  In my view, this approach upends the historic bipartite functioning of grand jury proceedings by vesting the traditionally separate roles of advocate prosecutor and neutral supervising judge in one branch of government.  In contrast, the appointment of a special master, a process currently embraced by our Court, preserves and fully vindicates the integrity of the confidentiality of grand jury proceedings and accords respect to the enumerated powers of our sister branches of government.

Before turning to the background underlying this matter, it is important to understand exactly what is at issue in this matter, and what is not in question. First, there is no contest as to the importance of conducting grand jury proceedings in secrecy, and that such secrecy is indispensable to the functioning of the grand jury. Second, it is beyond dispute that those who breach the confidentiality of grand jury proceedings should be punished for such violations. Third, there is little question that a judge overseeing a grand jury may appoint an individual to conduct inquiry into allegations of violations of the secrecy of grand jury proceedings, including the provision of a staff, the review of existing transcripts and physical evidence, the compelling of testimony and the production of documents, and the issuance of a final report including findings and reasoning for such findings. In re Dauphin County Fourth Investigating Grand Jury, 19 A.3d 491 (Pa. 2011).

Currently before our Court, however, is the discrete question of whether a judge overseeing a grand jury may authorize a "special prosecutor" to not only conduct inquiry into alleged grand jury confidentiality violations and to issue findings and a report, but, to go further, and use the grand jury process both to obtain a presentment and to prosecute.[1] It is this unprecedented extension of traditional judicial power that is before us.

---

[1] The OAJC notes that the special prosecutor's work culminated in a grand jury presentment recommending the filing of various criminal charges against the Attorney General, and that the special prosecutor submitted the presentment to the district attorney in Montgomery County, but offers that the special prosecutor "has seen fit to submit to a particular safeguard and check on the power with which he was invested, as he has not sought to initiate an affirmative prosecution." OAJC at 11. Interestingly, however, given its expansive view of the judiciary's authority to make such appointments, the OAJC does not explain what interests the special prosecutor was safeguarding, why his power warranted checking, or why exercising restraint was apparently salutary.

By way of background, the role of the grand jury traditionally has been prosecutorial, performed principally by the executive branch, and supervised by the judicial branch. The early grand jury in England served two primary functions, to accuse criminals and to extend the central government throughout England. *Kadish, Behind the Locked Door of an American Grand Jury: Its History, Its Secrecy, and its Process*, 24 Fla. St. U.L. Rev. 1, 5 (Fall 1996). Pennsylvania's early experience was similar, with the grand jury serving to screen criminal accusations but, consistent with our ultimate separation from the crown, it also played an active role in voicing dissatisfaction with government. Id. at 10-11. As noted by our Court in Commonwealth v. McCloskey, 277 A.2d 764, 771-2 (Pa. 1971), in most cases, an appropriate prosecuting official begins a criminal action with a complaint. Exceptions to the norm, however, include where a district attorney or attorney general submits a bill to a grand jury without a previous binding over or commitment of the accused. The "procedure in such cases, however, is under supervision of the court, and if the process and power is misapplied[,] the court will vindicate itself in restraining its exercise." Id. at 771. We also noted that a prosecutor's submission of an investigating grand jury presentment to an indicting grand jury must be with leave of court. Id. In explaining the history of the grand jury in Pennsylvania, the McCloskey Court noted that an investigating grand jury was justified to investigate criminal matters of general importance impacting the community, rather than the acts of individuals, including summoning and sending before the grand jury witnesses needed for an investigation. Concerns regarding the abuse of power by a grand jury and overreaching was the reason that a court was responsible for regulating the scope of the inquiry. Id. at 773. Indeed, the court was deemed responsible to "scrutinize the prosecuting official's petition for summoning the jury." Id. Thus, as a

historical matter, our courts have largely played a gatekeeping and supervisory role in grand jury proceedings, rather than an investigative or prosecutorial role. Id. at 775.

Our prior case law is entirely consistent with this historical approach to the functioning of a grand jury, and is contrary to the OAJC's unfamiliar and unnecessary extension of judicial power in the area of grand jury proceedings. For example, in Smith v. Gallagher, 185 A.2d 135 (Pa. 1962), our Court disapproved of the judicial empanelment of a grand jury and appointment of a special prosecutor to investigate crimes in Philadelphia in lieu of the district attorney. In doing so, we reasoned that the county judge authorizing the grand jury was not assigned to grand jury matters; that the district attorney denied that he was unable to perform his job; that there were mechanisms for the intervention of the Attorney General; and, most critically, that the authority granted to the special prosecutor was unprecedented and overly broad. In finding the actions by the lower tribunal to be illegal, we stressed that "there is no public office in Pennsylvania known as Special Prosecutor." Id. at 149. While, admittedly, the factual circumstances in Smith and this matter are dissimilar, nevertheless, our eschewing the notion of the judiciary appointing a prosecutor is consistent with a historical understanding of the prosecutorial nature of the grand jury and the respective roles of the executive and judicial branches.

Our decision in Dauphin County, which the OAJC "reaffirms," further bears this out. Important for purposes of this matter, and contrary to the OAJC's implication, no question of the ability of a "special prosecutor" to utilize a grand jury, and to prosecute to the full extent of the law, was remotely present in Dauphin County. Rather, what was at issue was the authority of the court to appoint a "special prosecutor" to investigate and gather information — no *prosecutorial* power was granted to this special prosecutor and none was implicated. After a careful reading of the opinion, it is clear that the title

"special prosecutor" was a misnomer, as observed by Justice Baer in his Concurring Opinion, and that the fact-gathering and reporting position appointed by the Court was more akin to a special master. Indeed, in that decision, our Court made reference to two other instances involving investigations of breaches of grand jury secrecy where a "special prosecutor" was appointed, but those too were only for the purpose of investigation and the submission of reports and recommendations. Id. at 504-509 (citing In re County Investigating Grand Jury VIII, 2005 WL 3985351 (Lack. Com. Pl. filed Oct. 25, 2005) and Castellani v. Scranton Times, 956 A.2d 937 (Pa. 2008)). Thus, to "reaffirm" Dauphin County is simply to embrace the existing and uncontroversial power of our courts to appoint an investigator and reporter — Dauphin County stands for nothing more.

Further, our Court in Dauphin County distinguished the roles of judicial investigator and executive prosecutor. In that case, the Dauphin County District Attorney sought to impanel a grand jury regarding alleged improprieties involving applicants for a slot machine license and approval of that license by the Pennsylvania Gaming Control Board. Subsequently, the subject of the grand jury proceedings alleged that protected information regarding the grand jury had been disclosed through media sources. After the issuance of a presentment against the license applicants, and various proceedings and appeals, our Court remanded the matter for the appointment of a special prosecutor to conduct inquiry into the alleged breach of confidentiality. Upon the conclusion of his investigation, the special prosecutor issued a report finding the source of the information disclosed to newspaper reporters could not be determined with certainty, in part due to the reporters' assertion of privilege under the Shield Law, which protects them and their sources.

On subsequent appeal, our Court not only made clear that the confidentiality that was essential to grand jury proceedings "call[ed] for a strong judicial hand in supervising the proceedings," but that when allegations of a breach of secrecy are alleged, the judiciary should investigate. Id. at 503-04 ("When there are colorable allegations or indications that the sanctity of the grand jury process has been breached and those allegations warrant investigation, the appointment of a special prosecutor to conduct such an investigation is appropriate."). In so doing, however, we strongly suggested a distinction between investigator and prosecutor when we discussed the role of the Shield Law, and clearly envisioned the Commonwealth, and not the judiciary, as the body to be engaged in prosecution:

> The foreseeable situation described in Castellani - the tension that might arise *where the Commonwealth sought to obtain a reporter's evidence concerning the source of a grand jury leak in a criminal investigation or prosecution of that leak* - is again not squarely before us *due to the limited inquiry ultimately undertaken by Special Prosecutor Blakey*, who did not force the issue directly. Thus, the question of whether the protections afforded by the Shield Law may yield to the governmental interests in the investigation of alleged violations of grand jury secrecy again need not be resolved at this juncture.

Dauphin County, 19 A.3d at 509 (emphasis added). Indeed, we further suggested these distinct roles of judicial investigator and executive prosecutor by noting that

> Special Prosecutor Blakey's investigation and report *does not foreclose further inquiry by an appropriate investigative or prosecutorial body that may wield the authority to obtain the reporter's evidence, and that of other individuals, concerning the alleged violations of grand jury secrecy.* We leave it to those entities to determine whether further investigation or action is required.

Id. at 510 (emphasis added).

From the above, it is plain that the role and authority of the "special prosecutor" in Dauphin County was merely that of an investigator — in my view, more appropriately titled a special master — to inquire and report, rather than that of a true prosecutor, which our Court in Dauphin County strongly suggested was a role for the executive branch. Thus, the OAJC's reliance upon Dauphin County is merely to affirm the unremarkable — the existing power of our Court to appoint a factfinder and investigator. Our decision in Dauphin County does not in any way, other than title, support or address the much more remarkable assertion that the judiciary has the authority to appoint a prosecutor and enlist a grand jury to prosecute and enforce any alleged breach of grand jury secrecy.

The OAJC has aptly provided the relevant factual and procedural background in this matter. See OAJC at 1-4. It is important to recognize, however, the breadth of the powers granted to the special prosecutor. Although not set forth by the OAJC, Judge Carpenter's order of May 29, 2004 makes manifest the broad scope of his claimed authority to appoint a special prosecutor and the broad range of the power conferred on the special prosecutor:

> AND NOW, this 29th day of May, 2014 after "preliminary investigation"; this court in its capacity as Supervising Judge of the 35th Statewide Investigating Grand Jury, finds there are reasonable grounds to believe a further more substantive investigation is warranted into allegations that statewide Grand Jury secrecy may have been compromised: It is therefore ORDERED and DIRECTED by this Court in accordance with the authority vested in it by the 1078 Pennsylvania Investigating Grand Jury Act of 1978, 42 Pa. C.S. § 4541, *et seq.* and the procedural rules that followed (Pa.R.Crim.P 220, *et seq.*) as well as relevant case law; that **THOMAS E. CARLUCCIO, ESQUIRE,** be and *is hereby appointed Special Prosecutor with full power, independent authority and jurisdiction to investigate and prosecute to the maximum extent authorized by law any offenses related to any alleged illegal disclosure of information protected by the law and/or intentional and/or negligent violations and rules of Grand Jury secrecy as to a former Statewide Investigating Grand Jury*, such as;

1.    42 Pa. C.S. § 4549(b) Disclosure of proceedings by participants other than witnesses …"all such persons shall be sworn to secrecy, and shall be in contempt of court if they disclose/reveal any information which they are sworn to keep secret."

2.    18 Pa. C.S. § 5101 Obstructing administration of law or other governmental function - "a person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty.

3.    Any other applicable offense.

It is FURTHER ORDERED by the Court that the Special Prosecutor:

1. Shall use any appropriate currently empaneled Grand Jury to investigate any alleged or suspected violations of secrecy or concomitant crimes related to such.

2. Shall have the right to request an application for an immunity order from the Attorney General.

3. Shall have the right to employ all appropriate resources including a minimum of one investigator and if necessary, one support staff.

4. Shall have day-to-day independence and will be free to structure the investigation as he wishes and to exercise independent prosecutorial discretion whether, which and when any potential witness should be brought before the Grand Jury and/or whether, which and when charges should be brought, including contempt of court.

5. Shall be permitted, while serving as Special Prosecutor, to consult with past and present members of the Office of Attorney General and take such action as is necessary to ensure that matters he is investigating and/or prosecuting in his role as Special Prosecutor are brought to a successful conclusion, so long as such consultation/action does not present a conflict of interest with his duties as Special Prosecutor and/or violate the secrecy oath.

6. Shall be empowered to respond to interference with his investigation by also having authority to investigate and prosecute crimes committed in the course of, and with the intent to interfere with the Special Prosecution's investigation such as Perjury, Intimidation of witnesses and other applicable and relevant violations of the law.

7. Shall comply with all relevant statutory and case law as well as all applicable canons of ethics.

8. Shall be removed from the position of Special Prosecutor only by the personal action of the Grand Jury Judge and/or the Pa Supreme Court.

9. Shall be appointed for a period not to exceed six months from today, unless the Special Prosecutor makes a written request to the Court for an extension setting forth the reasons for the extension.

10. The Special Prosecutor shall be compensated at the rate of $65.00 an hour to be paid by the Commonwealth of Pennsylvania. The investigator/support staff chosen by the Special Prosecutor shall be compensated at the rate of $20.00 an hour. All those seeking compensation shall keep detailed records of time and services rendered. All shall provide the Supervising Grand Jury Judge with a monthly accounting of time/services rendered.

11. Shall provide the Supervising Grand Jury Judge with periodic summaries of any progress.

12. Submit a report addressed to the Pennsylvania Supreme Court, and the Supervising Grand Jury Judge, setting forth any findings and recommendations on any proposed statutory, rulemaking or recommended practices that would preserve the critical requirement of secrecy in Grand Jury proceedings as well as insuring the rights of defendants to a fair trial and maintaining the integrity of our Grand Juries.

Montgomery County Court of Common Pleas Order, 5/29/14 (emphasis added).

The OAJC finds authority for this order based on a constellation of statutes. Specifically, it looks to Section 4549 of the Investigating Grand Jury Act, which places responsibilities on judges to maintain the secrecy of grand jury proceedings, 42 Pa.C.S. § 4549(b); the ability of a judge to bring alleged offenses to the attention of an investigating grand jury, 42 Pa.C.S. § 4548(a); and a supervising judge's general powers required or incidental to the exercise of jurisdiction, 42 Pa.C.S. § 323.

In my view, those statutes do not support such authorization and appointment powers. First, it is unexceptional that a supervising judge is responsible for the confidentiality of grand jury proceedings, that persons participating in such proceedings are sworn to secrecy, and that they "shall be in contempt of court if they reveal any

information which they are sworn to keep secret." 42 Pa.C.S. § 4549(b). Furthermore, an investigating grand jury has the power to inquire into crimes, such powers of inquiry include the use of the investigative resources of the grand jury to obtain initiation of civil and criminal contempt proceedings, and such offenses may be "brought to the attention of such grand jury by the court or by the attorney for the Commonwealth," 42 Pa.C.S. § 4548(a). However, in relying on this latter reference to the court's power, the OAJC conflates bringing a potential crime to the attention of the grand jury and actively prosecuting before it.

Moreover, and of critical relevance to the matter before us, by the Act's express terms, it is only an "attorney for the Commonwealth" who may be directed by the grand jury to prepare a presentment which is then submitted to the grand jury for a vote. 42 Pa.C.S. § 4551. Importantly, an "attorney for the Commonwealth" is specifically and clearly defined as the district attorney of the county where a *county* investigating grand jury is empaneled, or the Attorney General where, as here, a *statewide* investigating grand jury is at issue. 42 Pa.C.S. § 4542. There is no mechanism under the Investigatory Grand Jury Act by which the court, or an appointee thereof, may obtain a grand jury presentment.

Thus, in my view, the Investigatory Grand Jury Act does not expressly, or impliedly, provide a supervising judge with the power to appoint an individual to act as a "special prosecutor" who is not an "attorney of the Commonwealth," or for that individual to use the grand jury process to obtain a presentment and to prosecute such proceedings. In approving such appointment here, the OAJC has disrupted the bipartite nature of grand jury proceedings, allowing a court to act *both* as neutral supervisor and executive prosecutor.

Finally, I disagree with the OAJC's conclusion that the general powers of the courts forms a basis for such appointment power. Section 323 speaks in broad terms, including the power to issue "every lawful writ and process necessary or suitable for the exercise of its jurisdiction," and for the enforcement of any order the court may issue, as well as "all legal and equitable powers required for or incidental to the exercise of its jurisdiction." 42 Pa.C.S. § 323. Yet, it is questionable whether our inherent powers may usurp or vitiate express statutory limitations on the functioning of the grand jury. 42 Pa.C.S. §§ 4548; 4551. Indeed, a review of the entire Investigatory Grand Jury Act reflects the distinct role of the executive, as prosecutor charged with guiding the grand jury process, and the role of the judiciary, as a neutral, responsible for supervising the proceedings. Moreover, any such inherent power should be viewed in the context of traditional powers and roles.

In sum, the historic structure of grand jury proceedings, our case law, the operation of the Investigating Grand Jury Act, as well as a considered avoidance of separation of powers concerns if at all possible, indicate the judiciary does not have the authority to appoint an individual to act as a prosecutor before the grand jury and use the grand jury process to obtain a presentment, and to facilitate a criminal prosecution. By contrast, I believe that a judge overseeing a grand jury may authorize an individual — a special master — to conduct inquiry into alleged grand jury confidentiality breaches, to issue findings and a report, and to remedy any breach through contempt proceedings. Accordingly, in this matter, it is my opinion that the supervising judge did not have the authority to grant the special prosecutor *prosecutorial* powers, and therefore the presentment is without authority. As a result, I dissent from the majority's contrary conclusions in this regard.

Nevertheless, due to the circumscribed nature of the writ by which Attorney General Kane has sought relief — *quo warranto* — I conclude she is not entitled to relief. A *quo warranto* action historically has been the sole and exclusive method to test title or right to public office. Spykerman v. Township of Chester, 421 A.2d 641, 648 (Pa. 1980). Yet, the writ is limited. Critically, a *quo warranto* action is addressed to "preventing a continued exercise of authority unlawfully asserted, rather than to correct what has already been done under the authority." Id.; see also State Dental Council and Examining Bd. v. Pollock, 318 A.2d 910, 913 (Pa. 1974). Indeed, "[t]he gravamen of the complaint is the right to hold and exercise the powers of the office in contradistinction to an attack upon the propriety of the acts performed while in office." Spykerman, 421 A.2d at 648. In this respect, it is intended to address *public*, not *private* injury. Bd. of Revision of Taxes, City of Philadelphia v. City of Philadelphia, 4 A.3d 610, 627 (Pa. 2010) ("A complaint in *quo warranto* is aimed at the right to exercise the powers of the office, which is a pubic injury, rather than an attack upon the propriety of the actions performed while in office, which would be a private injury.") Therefore, a complaint in *quo warranto* addresses the continued exercise of authority, not past conduct.

Here, the Attorney General brought a *quo warranto* action to challenge the appointment of the special prosecutor and the grand jury presentment. With respect to her challenge to the special prosecutor, Attorney General Kane claims that the supervising judge unlawfully and unconstitutionally exceeded his authority in appointing a special prosecutor for the grand jury and asks that the appointment be deemed to be invalid and quashed, and for a ruling that the special prosecutor had no authority to hold such public office. Memorandum of Law in Support of Attorney General Kathleen G. Kane's Quo Warranto Action, 12/23/14, at 1, 13. Given the inherently forward looking

nature of a *quo warranto* action, to the degree the special prosecutor *continues* to occupy his office[2], I would hold that the supervising judge had the inherent power to appoint an individual to investigate the breach of grand jury secrecy and to remedy any breach through contempt proceedings. That is, the supervising judge's appointment of the special prosecutor *as a special master* was proper, and, the judge had the authority to grant certain investigatory powers to him. See Dauphin County. However, the granting and exercise of power beyond that recognized by this Court in Dauphin County was improper, and I would enjoin the special prosecutor from exercising such *prosecutorial* powers in the future.

With respect to her challenge to the presentment, the Attorney General seeks a ruling that "no legitimate report or presentment can issue from this Investigating Grand Jury." Memorandum of Law in Support of Attorney General Kathleen G. Kane's Quo Warranto Action, 12/23/14, at 13. However, a presentment has been issued, and, as made clear above, such retrospective relief, seeking to unwind the acts previously taken by the special prosecutor, is beyond the scope of the limited nature of an action in *quo warranto*. See City of Philadelphia; Spykerman. Thus, even though, in my view, the use of the grand jury and the issuance of the presentment were beyond the authority of the special prosecutor, there is no current remedy available through an action in *quo warranto*.

---

[2] It is unclear whether the special prosecutor's appointment has terminated, as he appeared on his own behalf at the oral argument before this Court on March 11, 2015. However, he has indicated that he is "unable to initiate any prosecution related to the alleged leaks," as the supervising judge has transferred the presentment to the Montgomery County District Attorney. Special Prosecutor's Brief at 25.