613 A.2d 683

Daniel ZONTEK, Thomas Mance, Robert F. Borgo, John Hoffner, Roy E. Eisaman, Robert W. Zentner, Bernard H. Mulvihill, Don Ewing, Joseph Mahkovec and Larry Chrzan, Petitioners,

v.

Robert W. BROWN, Dennis C. Harrington, Esq., James M. Howley, Esq., Helena G. Hughes, Dr. G. Sieber Pancoast, Daneen E. Reese and the State Ethics Commission, Respondents.

Commonwealth Court of Pennsylvania.

Argued May 13, 1992.

Decided Aug. 10, 1992.

John M. Campfield, for petitioners.

Calvin R. Koons, for respondents.

Before CRAIG, President Judge, and DOYLE, PALLADINO, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY, JJ.

CRAIG, President Judge.

The named petitioners in this case, members or former members of the Western Westmoreland Municipal Authority (officials), have filed a motion for summary judgment, and the respondents, the State Ethics Commission and its members (commission) have filed a cross-motion for summary judgment. The petition for review includes a quo warranto claim, through which the petitioners challenge the right of the commission's members to hold office (Count I). The petition also contains a request for equitable relief (Count II) and a declaratory judgment claim (Count III).

The relevant facts revealed by the pleadings are as follows. The commission sent letters dated May 7, 1987, to all of the petitioners except Chrzan, informing them that the commis-

sion was investigating them for alleged violations of section 3(a) of the Public Official and Employee Ethics Law (Ethics Act), Act of October 4, 1978, P.L. 883, 65 P.S. § 403. In a letter dated May 19, 1987, counsel for the petitioners, except Chrzan, requested the commission to forward to him all documents relating to the alleged violations. With the exception of petitioners Zontek and Mance, who received letters from the commission dated March 2, 1989 informing them again of the alleged violations, the petitioners received no communications from the commission between May 7, 1987 and October 6, 1989.

The petitioners aver that the commission "resumed" its investigation on October 9, 1989, and that between May 7, 1987, and October 6, 1989, "no known investigation or activity occurred" with regard to the alleged violations. The petitioners also allege that they (not including Chrzan) sent a letter to the commission on November 6, 1989, challenging the commission's jurisdiction over the petitioners and contending that the commission had failed to comply with statutory and other legal procedural requirements.

### a. Standing to bring a quo warranto action

The Attorney General argues that the petitioners have no standing to bring this quo warranto action. As the Attorney General points out, "a private person may not bring a quo warranto action to redress a public wrong when he has no individual grievance." *Spykerman v. Levy*, 491 Pa. 470, 485, 421 A.2d 641, 649 (1980). The *Spykerman* court also stated that

If a private person has a special right or interest, as distinguished from the right or interest of the public generally, or he has been specially damaged, he may have standing to bring a quo warranto action. *Brinton v. Kerr, supra; Schermer v. Franek*, 311 Pa. 341, 166 A. 878 (1933).

491 Pa. at 485–6, 421 A.2d at 649.

Pennsylvania courts, in addressing the question of whether an individual has standing to bring a quo warranto action,

have not specifically limited the rule quoted above to individuals who sought the position of the official they seek to oust.

The Attorney General argues that this court should not apply our holding in *Gwinn v. Kane*, 19 Pa.Commonwealth Ct. 243, 339 A.2d 838, *affirmed*, 465 Pa. 269, 348 A.2d 900 (1975), to the petitioners in this case. In *Gwinn*, this court concluded that a plaintiff, who had been indicted by a special prosecutor the Attorney General appointed to investigate bribery and corruption in the awarding of public contracts, had standing to bring a quo warranto action to challenge the appointment.

First the Attorney General asserts that *Gwinn* is factually distinguishable. Second, he argues that, if this court agrees that *Gwinn* is applicable, then any target of a commission investigation could impede an investigation by bringing a quo warranto action.

The interest the petitioners—except Chrzan, who is not being investigated—have in the commission's investigation of them, is significant and distinct from the interest of the general public, and similar to the interest the court recognized in *Gwinn* as giving that petitioner standing to bring a quo warranto action.

Furthermore, with regard to the Attorney General's second argument, in this case, once this court determines the merits of the petitioners' argument, the holding would resolve the issue and be dispositive of the issue if other parties raise it in the future. In this case, the petitioners have a special interest in the appointed members of the commission, because those members are involved in or will ultimately be involved in the commission's investigations of the petitioners' alleged violations of the Ethics Act. This court's decision in *Gwinn* clearly supports the petitioners' position and our conclusion is that they have standing to bring a quo warranto action.

### b.   Applicability of Blackwell II

■   In *M.P. v. State Ethics Commission*, 144 Pa.Commonwealth Ct. 429, 601 A.2d 902 (1992), *appeal pending*, No. 004 M.D. 1992 Pa. Supreme Court, this court held that a commis-

sion investigation started before the Sunset Act, Act of December 22, 1981, P.L. 508, *as amended,* 71 P.S. § 1795.6(c), caused the commission to be a legal nonentity after June 30, 1988, could not be revived and pursued further after June 26, 1989, the date upon which the commission was reinstituted by valid reenactment. In *Blackwell v. State Ethics Commission,* 523 Pa. 347, 567 A.2d 630 (1989) (*Blackwell II* ), dated December 13, 1989, the Supreme Court had invalidated the commission's reinstitution by legislative committee under the Sunset Act.

In *Blackwell v. State Ethics Commission,* 527 Pa. 172, 589 A.2d 1094 (1991) (*Blackwell V* ), the Supreme Court explained how the court's decision in *Blackwell II* should be applied to proceedings within differing time frames, i.e. prospectively, retrospectively, or retroactively. Specifically, the Supreme Court stated as follows:

> We find no compelling reason to limit our holding in *Blackwell II* to wholly prospective application.
>
> .    .    .    .    .
>
> Our decision in *Blackwell II* did not specifically declare it to be prospective only. Therefore, *we hold that our ruling in Blackwell II shall apply* to the instant appeal [citation omitted] the instant consolidated appeals, and *to all proceedings pending at the time of our decision in Blackwell II* December 13, 1989), *wherein the issue of the constitutionality of the Leadership Committee postponement provision in Section 4(4) of the Sunset Act was timely raised and properly preserved at all stages of adjudication.* (Emphasis added.)

*Blackwell V,* 527 Pa. at 188, 589 A.2d at 1102.

The clear language of that opinion indicates that the holding in *Blackwell II* applies only to cases involving "proceedings" before the commission or the courts that were "pending" on December 13, 1989, where the leadership committee issue had been raised. *Blackwell II* was applicable to *M.P.* because M.P. had raised the leadership committee issue before the Supreme Court's December 13, 1989 decision.

Thus, the application of *Blackwell II* to this case hinges on whether or not the actions of the Ethics Commission regarding the petitioners constituted a "pending proceeding" and whether or not the petitioners had raised the issue before the Supreme Court's December 13, 1989 decision in *Blackwell II.*

The petitioners argue that there was no pending proceeding at the time of the *Blackwell II* decision and that therefore they timely raised the issue at the earliest possible time— when the SEC issued an investigative complaint against the petitioners.

The Supreme Court's reference in *Blackwell V* to pending proceedings encompasses cases such as this which were in the administrative process once the commission notified the petitioners that it was investigating them.

The procedural history in *Blackwell* is similar to the history of this case. In *Blackwell,* the petitioner objected after being notified by the commission that it was investigating him. The commission rejected the petitioner's objection and continued its investigation. The petitioner then initiated an action in equity and a declaratory judgment action in this court. During the course of proceedings in this court, a judge of this court conducted a hearing on the petitioner's motion for a preliminary injunction seeking to stay a commission issued subpoena. The court granted the injunction, and the commission appealed to the Supreme Court.

In the meantime, this court considered the commission's preliminary objections to the petitioner's complaint in this court. In a concurring opinion Judge Colins first suggested that there was a question of whether the commission was lawfully in existence.

The Supreme Court agreed with Judge Colins, and concluded that the issue was a non-waivable issue of jurisdiction, and declared the leadership committee provision of the Sunset Act unconstitutional.

In this case, the petitioners' November 1989 letters to the commission challenged the commission's "jurisdiction". However, rather than take the course that the petitioners in

*Blackwell* took, i.e., initiate a declaratory judgment action when first notified of the investigations, they waited until the commission took additional affirmative action. The letters asserting a jurisdictional challenge to the commission do not indicate that the challenge is based on the Sunset Act issue. The Supreme Court in *Blackwell V* indicated that only parties that raised the specific issue of the Sunset Act could benefit by its holding in *Blackwell II*.

Thus, at least with regard to the petitioners' claim for equitable relief and their declaratory judgment action, they did not properly or timely raise the Sunset Act issue, in accordance with *Blackwell V*, so as to bring their case within *Blackwell II*.

c. *Applicability of Blackwell II to a quo warranto action*

The petitioners have brought an action in quo warranto, and hence, this court is faced with the question of whether the *Blackwell II* decision can apply to this action to oust members of the commission, even though, as discussed above, the petitioners cannot rely upon that decision with regard to their equity and declaratory judgment action to terminate the commission's proceedings.

Although the quo warranto remedy has not arisen in the context of the leadership committee issue before, the Supreme Court's limitation of its decision in *Blackwell II* is clear. Hence, the Supreme Court's holding in that case, that the Ethics Commission went out of existence in 1988, has no application to actions brought after the date of the decision, including this quo warranto action, unless the issue was properly raised. The petitioners' failure to bring the quo warranto action raising the constitutional revival issue before December 13, 1989, precludes the application of the *Blackwell II* holding to this quo warranto action.

In summary, because the commission commenced this proceeding in 1987 by notifying the petitioners that it was investigating them, the proceeding was in existence before *Blackwell II*, so that the only way that decision could affect the outcome in this case is if it fitted within the condition of retrospective

application the Supreme Court set out in *Blackwell V*—that is, by having raised the constitutional revival issue on or before December 13, 1989. Because this case clearly does not fall within the conditions set out in *Blackwell V* for retroactive application, this court concludes that the respondents are entitled to summary judgment.

FRIEDMAN, J., dissents.

## ORDER

NOW, August 10, 1992, the petitioners' motion for summary judgment is denied and the motion for summary judgment filed by the respondents is granted.

PELLEGRINI, Judge, concurring.

I concur with the majority but for a different reason.

The Pennsylvania Sunset Act of December 22, 1981, P.L. 508, *as amended,* 71 P.S. §§ 1795.1–1795.14, is unconstitutional for reasons I set forth in *West Shore School District v. Pennsylvania Labor Relations Board,* 131 Pa.Commonwealth Ct. 476, 570 A.2d 1354 (1990). Because the Sunset Act is unconstitutional and of no effect, its operation created no interregnum in the operation of the State Ethics Commission. Because the State Ethics Commission never went out of existence, its investigations and proceedings never lapsed.

Accordingly, I would also grant the respondents' Motion for Summary Judgment but for a different reason.

McGINLEY, Judge, dissenting.

I respectfully dissent. Critical to the majority's position is the belief that "[t]he Supreme Court's reference in *Blackwell V* to pending proceedings encompasses cases such as this which were in the administrative process once the commission notified the petitioners that it was investigating them." Op. at 633. The holding of *Blackwell V,* quoted by the majority, reduces to the following: *Blackwell II* applies retroactively to "proceedings pending ... wherein the issue ... was timely

raised and properly preserved at all stages of adjudication."
The "proceedings" referred to are adjudicatory, and while an
investigation may lead to an adjudication, it is not an adjudica-
tion in itself. There can be no burden on someone to raise
and preserve an issue at least until such time as there is a
burden to respond. In regard to these petitioners there
existed only an "investigation" on December 13, 1989.

I agree with the majority that "proceedings" existed in
*Blackwell* because the subject there took the initiative to seek
a declaratory judgment. I do not believe it is fair to fault the
petitioners here for "wait[ing] until the Commission took
additional affirmative action," slip op. at 8, especially where
there was no duty to respond. Here they were waiting for the
authorities to complete the investigation, or perhaps to termi-
nate it if there were a lack of evidence. Neither Blackwell nor
these petitioners were under a legal obligation to start an
independent action. The petitioners did respond to the Com-
mission in their letters of November 6, 1989. I agree this did
not raise the issue of Section 4(4) of the Sunset Act, but their
responses were not a pleading—*because* there was as yet no
official accusation. They certainly should not be barred from
raising an issue in a later proceeding because they failed to
state it in their letters.

Section 9 of the Act of June 26, 1989, P.L. 26 (Amendatory
Act), provides that the Act (which implemented sweeping new
rules, procedures and powers) "shall not apply to violations
committed before the effective date, and causes of action
initiated for such violations shall be governed by prior law,
which is continued in effect for that purpose as if this act were
not in force." 65 P.S. § 409 note. We held in *M.P.* that the
attempt to continue prior law in effect could not save former
investigations and proceedings from "the death knell of the
proceedings at Sunset time," 144 Pa.Commonwealth Ct. at
437, 601 A.2d at 906–06, and recognized that Section 9 ex-
presses a clear intent that old allegations be handled accord-
ing to the former law. In fact, under the former law the
Commission is powerless to "adjudicate" and is only autho-
rized to conduct investigations and then to recommend and

provide the information for criminal proceedings to be evaluated by the proper law enforcement officials for criminal prosecutions or dismissal. Former Section 7(9)(iii) and (11) of the Ethics Act, former 65 P.S. § 407(9)(iii) and (11).[1]

Under *Blackwell V,* where adjudicatory proceedings were pending as of December 13, 1989, subjects are denied *retroactive* application of *Blackwell II* unless they raised and preserved the Sunset Act issue as of that date. However, where there were no adjudicatory proceedings pending as of December 13, 1989, subjects are fully entitled, once an adjudication commences, to raise the issue of *Blackwell II* and to benefit from a *prospective* application of that case. In the present case, I believe the first adjudicatory proceedings commenced either when petitioners filed their petition for review in this court's original jurisdiction or when the Commission filed its "investigative complaints" against the petitioners on February 1, 1991.[2]

Under *Blackwell II* the petitioners are entitled to the injunction they have requested, prohibiting the Commission from "conducting or continuing any investigations, hearings or other proceedings with respect to the [petitioners]," and "precluding the re-opening of same." Petition for Review ¶ 49(a); Reproduced Record 15a. Although an investigation is not an adjudication, it is part of the business of the Commission. We held in *M.P.,* in effect, that all business of the Commission terminated as of June 30, 1988, and was not subject to being resurrected. Because the basis for the petitioners' standing to

1. Contrast the procedures under the Amendatory Act, where the Commission, *after* an "investigation," may issue a "findings report," in the nature of a complaint, which triggers the requirement that the subject file within thirty days a "response" in the nature of an answer, specifically admitting or denying each allegation. The subject may then demand a "hearing," following which the Commission must deliberate and issue a final "order," which is subject to appeal. Section 8(a)–(i) of the Ethics Act, *as amended,* 65 P.S. § 408(a)–(i). Under these provisions an "adjudication" commences with the filing of the "findings report."

2. The applicability of the prior law to this case under Section 9 of the Amendatory Act calls into question the propriety of the filing of the "investigative complaints," for which there is no provision under the prior law.

bring their quo warranto claim is their attempt to attack the validity of the appointments of the current members of the Commission as a means of ending the actions against them, the grant of the injunction destroys their quo warranto standing and therefore moots the challenge to the members of the Commission themselves.